## WHITNEY *v.* SWETT.

No interest or estate in land greater than an estate at will, can be conveyed without writing.

A tenancy, shown by written receipts for rent to be from year to year, or from month to month, is but a lease at will.

Notice to quit may be waived by the party giving it, and it is, thenceforth, inoperative.

After a notice to quit, and neglect of the tenant to remove, the lessor may peaceably remove the tenant's goods, doing no unnecessary damage.

But any abuse of this authority will render him a trespasser from the beginning.

Where the meaning of language is uncertain, because the evidence leaves it doubtful whether the speaker used the words in his own behalf, or as agent of another, the question is to be left to the jury, under instructions from the Court.

TRESPASS for breaking and entering the plaintiff's house in Exeter, and throwing his furniture out of the house upon the ground, and expelling and keeping out the plaintiff and his family from the house.

Plea, the general issue, with a brief statement that the house was the close of the defendant, and that the plaintiff not being then in the actual possession thereof, the defendant entered and carefully removed the property, doing no unnecessary damage.

On the trial, it was admitted that the defendant owned the house. The plaintiff offered in evidence a receipt to the follow-

ing effect: " Exeter, 19 March, 1847. Received of Aaron Whitney one quarter's rent of house, occupied by him to this date, at $75 per annum, (signed) S. B. Swett." The plaintiff also introduced a receipt signed by the defendant, dated June 19, 1847, for $18.75, being one quarter's rent of the house, to date; and another receipt dated October 18, 1847, for $18.75, being for the rent up to September 19, 1847. It was admitted that the rent due on the 19th September, being unpaid, it was demanded, and on the 11th of October, the plaintiff was notified to quit the premises on the 20th.

The plaintiff alleged that the receipt of the 19th of March was competent evidence of a lease of the premises for a year. The Court instructed the jury that it was entirely immaterial whether the tenancy were for a year, or for three months, and so on from three months to three months, — that, in either case, it was only a tenancy at will, and might be determined on seven days' notice if the rent were unpaid, and that it was peculiarly immaterial in this case, because it was admitted that the rent due on the 19th of September was unpaid; that payment was demanded and notice given the plaintiff on the 11th of October to quit the premises on the 20th.

Head, a witness for the plaintiff, testified that the plaintiff furnished him the money to pay the rent due on the 19th of September, and that he paid it to the defendant on the 18th of October. The witness told the defendant that the plaintiff wished to occupy the house until spring. The defendant said that he had no security for the payment of the future rent. The witness then said he (the witness) would engage that the plaintiff should give security. The defendant then said " very well," went into his office, and wrote the receipt, and Head paid him the money. Upon his cross-examination Head testified that the defendant made it a condition of the plaintiff's remaining in the house that he should give security, — that he (Head) did not become security, but engaged that the plaintiff should give security. It did not appear that any security was given for the rent, by any one. The Court instructed the jury that if they believed that Head agreed on his own account that the plaintiff should give security

for the rent, and the defendant accepted Head's personal undertaking in lieu of such security, Head would be liable if the plaintiff did not furnish the security. If such an agreement were made between Head and the defendant, a new tenancy would be created, which could be terminated only on a new notice. But if the jury believed that Head made the agreement merely as agent for the plaintiff, and was not understood by himself and the defendant as intending to make himself personally liable, the agreement must be considered as if made by the plaintiff in person. The plaintiff contended this was a question of law; but the court left it to the jury to find, upon the evidence of Head, whether he himself became security to the defendant for the future rent, or acted only as agent for the plaintiff.

It was in evidence that the defendant entered the house on the 1st of December. At that time the plaintiff and his family were absent. There was a small porch about six feet high on one side of the house, under which the defendant placed the stove and fire-set, and some other articles, but it was not large enough to afford much protection from the rain. He placed in the wood-house the bureau and chairs, and straw bed, and the feather beds and bedding, which were laid on the wood and chips. The wood-house had no floor. Some ladies' silk bonnets were hung up in the wood-house. The crockery and glass were put into barrels outside of the porch. It appeared that the defendant gave directions that the furniture should be moved carefully, saying that if it were injured he should be obliged to pay for it. The hardware was rusty, the window curtains and bedding were soiled, the beds were damp, and one seemed mouldy when dry, and the stair-carpet was pulled up without taking out the nails.

In relation to the question of damages, the Court instructed the jury that they were to consider the damage done to the property by its removal,— that, in addition to this, they might consider the trouble and inconvenience sustained by the plaintiff by the necessity of finding another place to deposit it, and another place of residence,— that they should take the whole case into consideration, and award to the plaintiff such sum in damages as

under the circumstances they thought the defendant ought to pay, and the plaintiff ought to receive.

The Jury returned a verdict for the plaintiff, which the defendant moved to set aside.

*Wells* and *Christie*, for the plaintiff.

*Marston* and *Emery*, for the defendant.

BELL, J. No estate or interest in lands can be created or conveyed without writing, but an estate at will. N. H. Rev. Stat. ch. 130, § 12. It is therefore immaterial how the existence of a tenancy is shown, whether by parol evidence, or by written instruments, as receipts for rent, or the like; the right of the tenant, whatever might seem to be the actual contract of the parties, is nothing but a tenancy at will unless it can be shown, that some other or higher interest or estate, as a tenancy for life or years, was created or conveyed by writing. The ruling of the Court was therefore correct, that, in the absence of any writing to create or convey another estate, the plaintiff's interest in the property in question was only that of a tenant at will.

The Revised Statutes, ch. 209, § 1, provide, that "any lessor or owner of any lands or tenements may at any time determine any lease at will, by giving to the tenant a notice in writing to quit the same at a day therein named," and by § 2, if any tenant or occupant neglects or refuses to pay the rent due and in arrear upon demand, seven days' notice shall be sufficient.

It appears, by the case, that the rent was payable quarterly; that a quarter's rent was due September 19, 1847, and was not paid; that it was demanded on the 11th of October, and on that day a notice was given to the plaintiff to quit the premises on the 20th of October. This was a sufficient notice, and the tenancy was by that notice terminated on the 20th. After that day the plaintiff was a trespasser; and his goods were *damage feasant*, and the owner had a clear and perfect right to go into the house with suitable assistants, and there, peaceably and quietly, without breach of the peace, remove the goods to a near

and convenient distance, and there leave them for the use of the owner, doing them no unnecessary damage.

The power thus given by the law is one liable to great abuse, and therefore must be strictly pursued. A man may become a trespasser *ab initio*, not only by using an authority, which the law gives him for improper purposes, or by pushing the exercise of it beyond due limits, but by exercising it in an illegal and improper manner to the prejudice of another. *Barrett* v. *White*, 3 N. H. Rep. 210; *State* v. *Moore*, 12 N. H. Rep. 42.

There was evidence tending to show, that the property in this case was removed in an improper manner; as, that the carpets were torn up without removing the nails, and that the goods were deposited in a place not suitable; as, beds upon the ground, &c. If this evidence was credited by the jury, the defendant was a trespasser without any legal justification, and the rule of damages given to the jury was the only one which ought to govern them.

The question arising upon the testimony of the witness, Head, was properly referred to the jury. By the notice of the 11th of October, the plaintiff's tenancy would terminate upon the 20th, but it was competent to the defendant to waive the notice, which would leave the parties in the same position as if no notice had been given.

Such waiver may be unqualified, or it may be conditional. If the defendant accepted Head's personal agreement to be surety for the rent, or to furnish security, that was an unqualified waiver. If Head was merely an agent of the plaintiff, doing his business, and speaking in his behalf alone, then the waiver, if any, was conditional; to take effect if the security was furnished in a reasonable time, and not otherwise. As there was no security in fact furnished, the agreement to waive the notice, if it was of this conditional character, fell to the ground.

In the way in which Head gave his evidence, it was open to doubt, which of these was the actual view of the parties. This doubt does not arise upon the meaning, the force, and construction of the language, for that it would be the duty of the Court to interpret. But it depends upon the question, whether the

words are to be deemed the words of Head in his own behalf, or the words of the plaintiff alone, spoken for him by his agent. This question of fact depends not so much on the meaning of what was said, as on a just consideration of all the facts and circumstances in evidence bearing on the question of Head's agency, and the intention and understanding of the parties, as to what took place between them.

The case, so far as appears, having been properly and fairly tried, and the rulings and instructions of the Court being correct and proper, there is no foundation for the motion to set aside the verdict. *Judgment for the plaintiff.*