SMITH v. DETROIT LOAN & BUILDING ASSOCIATION.

1. LANDLORD AND TENANT—NOTICE TO QUIT—RE-ENTRY—STATUTES.
   3 How. Stat. § 5774, provides that, in all cases of neglect or refusal to pay rent on a lease at will or otherwise, seven days' notice to quit, given in writing by the landlord to the tenant, shall be sufficient to determine the lease. 2 How. Stat. § 8295 *et seq.*, prescribes a summary procedure to recover the possession of lands withheld by a tenant after the determination of his estate as above provided. *Held*, that a tenant's right to the possession of leased premises terminates upon his failure to pay the rent due within the time fixed by the notice; that the landlord may then exercise his common-law right peaceably to re-enter and take possession to the exclusion of the tenant; and that such right is in no way abridged by the remedy provided at law.

2. SAME—FORCIBLE ENTRY AND DETAINER—WHAT CONSTITUTES.
   An entry which has no other force than that implied in every trespass is not within the forcible entry and detainer statute.

3. SAME.
   Where a landlord, by notice to quit, terminates a tenancy for nonpayment of rent, and afterwards, during the tenant's temporary absence, gains possession of the premises and removes the tenant's goods, he is not liable to the latter for injuries inflicted by his agents in repelling the efforts of the tenant to regain possession, unless more force was used than was necessary to accomplish the result.

MOORE, J., dissenting.

Error to Wayne; Carpenter, J.  Submitted June 8, 1897.  Decided December 21, 1887.

Trespass by Minnie Smith against the Detroit Loan & Building Association.  From a judgment for plaintiff, defendant brings error.  Reversed.

*Levi J. Fick* and *Robert Young*, for appellant.

*Jay Fuller*, for appellee.

Moore, J.  Plaintiff recovered a judgment against the defendant for a trespass committed upon her person and to her personal property, from which judgment defendant appeals.

Plaintiff's declaration alleged, in substance, that she purchased upon land contract from defendant, on the 20th day of March, 1890, lot 28 and the west half of lot 29, of Hunt & Leggett's subdivision.  The declaration then stated the terms of the contract as originally made, and alleged:

"That plaintiff went into possession of the premises by virtue of it, and that November 1, 1895, the contract was modified [stating the terms of the modification], and that on March 30, 1896, while she was in the possession of the premises by virtue of the contract, the defendant entered upon said premises, and without process of law, and contrary to the just rights of the plaintiff in said premises, and while the plaintiff was sick, wickedly and wrongfully caused the said plaintiff to be knocked down and bruised, and to be thrown bodily from and out of the said building on said premises, and to be dragged out from said premises;   *   *   *   and that the said defendant caused the goods and chattels of the plaintiff in said buildings on said premises to be thrown into the street, and deprived plaintiff wrongfully of her goods and chattels," etc.

Another count in the declaration charged that the plaintiff came into possession of said premises March 20, 1890, by virtue of said contract and agreement, and that, while she was rightfully in possession of said premises, an assault was made upon her by defendant, and her goods were thrown into the street.

The plaintiff introduced testimony tending to show all of the facts stated in her declaration. The modification of the contract which plaintiff claims was made in October or November, 1895, was an oral modification, and not in writing. It is the claim of the defendant that in the fall of 1895 the plaintiff was in default in her payments under the contract, and that proceedings were commenced before a circuit court commissioner to obtain possession of said premises, which resulted in a judgment for restitution in favor of the defendant corporation; that, after this judgment was obtained, an arrangement was made with the plaintiff by which she was to pay rent at the rate of $10 per month, and that her possession from that time was to be as tenant, and not as vendee. The record discloses that on February 21, 1896, the defendant caused a notice to quit or pay rent to be served by leaving it at the house with Mr. Engel, who occupied the lower part of the house as a tenant under Mrs. Smith. Within a week plaintiff had knowledge of the serving of this notice, and filed a bill in equity. In her bill of complaint she claimed to be in possession of the premises as vendee by virtue of the terms of the contract, setting it up, and stating that she was ready to perform all of its conditions, and praying for an accounting, and for specific performance, and for a writ of injunction. A temporary injunction was granted, according to the prayer of the bill. Defendant answered to said bill, and upon its motion, on March 30, 1896, the injunction was dissolved.

At this time plaintiff was keeping house in the upper part of the house upon the premises. No one was living in the lower part of the house. She had occasion to go to the business part of the city during the day, and before doing so locked the house, and carried the key with her. During her absence, and shortly after the injunction was dissolved, the attorney for the defendant unlocked one of the doors of the house, caused the plaintiff's goods to be removed to the barn upon the premises, and put a family in possession. Upon the same day, and shortly after, the

plaintiff returned to the premises, unlocked the side door of the house, and entered. She claims she was then set upon by the persons in possession, and very cruelly beaten; that, during her absence, her furniture had been thrown out of the house, and that she had never seen it from that time until the time of the trial; that, as the result of the beating, she was sick, and confined to the house, for some time; that, as soon as she was able to do so, she saw the defendant corporation, and was referred by it to its attorney; that she informed the attorney she wanted a deed of the premises, and was ready to comply with the terms of the contract; that he informed her she had been fired out of the premises, and that he had instructed the person who had put her out to keep her out; that, if she went back again, she would be kicked out, and he would have her arrested.

On the part of the defendant it was claimed that Mrs. Smith was not treated as she testified; that no more force was used than was necessary to repel her attacks; that she finally left the premises voluntarily; that no injury was done to the personal property, and that she was notified where it was, and that she could have it at any time.

The circuit judge charged the jury, in effect, that they could not go back of the proceedings before the circuit court commissioner, which proceedings must be regarded as conclusive, and that the relation of vendor and vendee was ended by them; that the relation of vendor and vendee could not be restored by an oral agreement between the vendor and the vendee. He further charged them that the notice of February 21, 1896, that plaintiff should either vacate the premises or pay the rent due, did not terminate the relation of landlord and tenant; that under such circumstances, if the tenant does not vacate, it is the duty of the landlord to commence proceedings in court, and get a judgment, before a tenancy can be ended; and that in this case, while the entry was, in the eyes of the law, a peaceable entry, it was nevertheless an unlawful entry, and he charged the jury they must find a ver-

dict for some amount in favor of the plaintiff. He then charged them upon the question of damages to her person; and, in reference to the damages to the goods, he charged the jury as follows:

"Respecting the wrong done her goods, if you find that all the defendant did was to set her goods outside, and notified her that she could take them, it was her duty to take them, and thereby lessen the damage to that extent. * * * If, on the other hand, she was deprived of the goods entirely, and told she could not have them, why then she would be entitled to the value of the goods."

The defendant insists there are three reversible errors in this case. One is that the proofs do not sustain the cause of action alleged in the declaration, because the cause of action alleged is that the plaintiff was in possession as vendee under the contract, while the proofs show that she was in as a tenant, and that her tenancy had been terminated by the notice, and the court erred in not directing a verdict for the defendant as requested. Another ground assigned to be error is that, as the entry was a peaceable entry of premises to the possession of which the defendant was lawfully entitled, therefore the plaintiff cannot recover. The third claim is that the court erred in his instruction to the jury as to the damages which might be allowed in relation to the personal property.

The declaration was not demurred to, but the plea of the general issue, with notice of the defenses heretofore mentioned, was interposed. The gist of the declaration is, not a trespass upon real property, but a trespass upon the person and to personal property, while the plaintiff was rightfully in the possession of certain real property. We quite agree with the learned trial judge that it was immaterial whether the possession of the real estate by the plaintiff was as vendee, as claimed by her, or as a tenant, as claimed by defendant, if she was in fact lawfully in the possession of the premises; and we see nothing in the pleadings that would prevent a recovery if the facts warranted it.

If it be assumed, as it must be, for the purposes of this case, under the proofs, that, after the agreement of November, 1895, the plaintiff's occupancy was that of a tenant, the next question to be considered is, Did the notice of February, 1896, terminate the tenancy, so that defendant was justified in taking possession of the premises as it did, and using force to put the plaintiff out when she attempted to repossess herself of the house? Defendant insists it did, and cites 3 How. Stat. § 5774; 2 Tayl. Landl. & Ten. §§ 531, 532, and note 1; *Hoffman* v. *Harrington*, 22 Mich. 55; *Hyatt* v. *Wood*, 4 Johns. 150 (4 Am. Dec. 258); *Ives* v. *Ives*, 13 Johns. 235; *Mussey* v. *Scott*, 32 Vt. 82. An examination of the authorities cited will show that the decisions were rendered in cases brought either for trespass to the real estate, or to obtain the possession of the real estate, or where the tenancy was ended beyond any contingency that it might be restored by the act of the tenant. I think with the trial judge that section 5774, 3 How. Stat., is to be construed in connection with section 8295, 2 How. Stat., which provides how possession of premises may be recovered, and section 8299, 2 How. Stat., which provides that upon the trial to recover possession of the premises, if it is claimed that complainant is entitled to the possession of the premises in consequence of the nonpayment of any sum of money due either as rent or as a part of the purchase money, this amount shall be ascertained, and be stated in the judgment, and with section 8308, 2 How. Stat., which provides that no writ of restitution, for five days after judgment, shall issue, if the defendant shall pay, during the five days after the rendition of judgment, the amount so found due, and double the amount of costs.

If effect is to be given to the provisions of all these sections, I do not see how the construction contended for by the defendant can be given. The tenant has a right to rely upon these provisions of the statute, and that right cannot be cut off by the plaintiff's arbitrarily taking the law into his own hands, and determining for himself that

the tenancy is ended. Where there is a dispute between the vendor and vendee, or the landlord and tenant, or the mortgagor and the purchaser at a mortgage sale, as to the right of possession, it cannot be said that the person who is seeking to obtain possession is given entry by law until that dispute is settled by the courts in the manner prescribed by law. An entry under the circumstances claimed by the plaintiff to exist in this case was, as the learned trial judge stated, an unlawful entry (2 How. Stat. § 8284), and cannot be excused or justified, where the action is brought for injury to the person and the personal property of the one evicted. No great hardship can come to any one by following the provisions of the statute in asserting possessory rights. It is undoubtedly the purpose of these statutory provisions to change the common law in relation to the right of entry where that right is controverted, and to provide a peaceable and summary way to dispose of a disputed right of possession. A hearing may be had within a very short time, and must be had within 30 days, and no appeal can be taken without giving a bond in twice the amount of the annual rental of the premises in dispute. The statute should be given such a construction as to make it effective, and do away with such disputes and encounters as occurred in this case.

As to the other assignment of error, in relation to the charge of the court upon the question of damages in relation to the personal property, we think there is testimony in the case that justified the giving of the charge.

I think the judgment should be affirmed.

MONTGOMERY, J. I cannot agree with the conclusion of Mr. Justice MOORE. On the contrary, I think that, when the plaintiff failed to pay the rent due within the time fixed by the notice served upon her, her right to occupy the premises terminated. In my opinion, it was not the purpose of section 8299 and section 8308 to abridge the common-law right of re-entry in such cases. These sections should be construed as providing a remedy by

proceedings in court, and the limitations are to be construed as limitations placed upon such remedy.. To give to these sections of the statute the construction adopted by the trial judge, and approved by Mr. Justice Moore in his opinion, is to extend the term of the tenant beyond the time fixed by agreement. In 2 Tayl. Landl. & Ten. § 532, it is said, after a consideration of many authorities:

"The right of the landlord forcibly to enter, and expel the tenant who holds over after the conclusion of his term or the expiration of a notice to quit, subject only to indictment under the statutes for excessive force against the person, is now generally established."

In *Ives* v. *Ives*, 13 Johns. 235, it is said:

"It is well settled that the person having title—that is, having a right to enter—is not liable in an action of trespass for entering with force, although liable to indictment for a forcible entry."

To the same effect is *Souter* v. *Codman*, 14 R. I. 119 (51 Am. Rep. 364).

In the case of *Freeman* v. *Wilson*, 16 R. I. 524, it is said:

"At the expiration of a notice to quit, the tenant becomes a trespasser, and the landlord may enter the premises during the tenant's absence, take possession, and remove the tenant's goods, without legal process, and the tenant has no right to re-enter."

And see *Low* v. *Elwell*, 121 Mass. 309 (23 Am. Rep. 272); *Hyatt* v. *Wood*, 4 Johns. 150 (4 Am. Dec. 258).

In *Fuhr* v. *Dean*, 26 Mo. 116 (69 Am. Dec. 484), it is said:

"Where one having title to land and a right of entry enters thereon, although the entry be by force, the common law affords no civil remedy to the party dispossessed. He must resort to the statutory remedy by action of forcible entry and detainer."

2 How. Stat. § 8284, provides:

"No person shall make any entry into lands, tenements, or other possessions but in cases where entry is given by

law, and in such cases he shall not enter with force, but only in a peaceable manner."

The succeeding sections provide how possession may be restored if one does enter by force.

In construing statutes containing similar provisions, the courts have not been agreed as to what is meant by force and a peaceable manner. In *Smith* v. *Reeder*, 21 Or. 541 (15 L. R. A. 172), it was held, in a case where a lease of property had by its own limitation expired, and the tenant refused to surrender possession, but continued to hold over, and the landlord, during the temporary absence of the tenant, leaving no one in possession, entered in a peaceable and orderly manner, and, having so entered, forced open in a peaceable manner an outer door of a dwelling house on the premises which had been fastened by the tenant, and in a careful manner removed the tenant's goods, and stored them in an outbuilding, and moved his own household goods and family into the house, sending word to the tenant that he could have a reasonable time in which to come upon the premises to remove his goods and stock, that this was not a forcible entry, within the meaning of the statute. In the same case it is held that a forcible entry, within the meaning of the statute, is an entry accompanied with some circumstance of force or violence to the person, or one accomplished in a riotous or tumultuous manner, endangering the public peace. An entry which has no other force than that implied in every trespass is not within the statute.

In the case of *Ft. Dearborn Lodge* v. *Klein*, 115 Ill. 191 (56 Am. Rep. 133), it is held:

"The word 'force,' as here used, means 'actual force,' as contradistinguished from 'implied force.' Any entry requires force, in the literal sense of the term, but that, of course, could not have been meant, for it would involve an absurdity. Nor does it mean that force which the law implies where a peaceable entry is made by one having no right to enter, for the act absolutely prohibits a person of that kind from making an entry at all. The conclusion, therefore, is irresistible that the force which the statute inhibits is actual force."

See *Willard* v. *Warren,* 17 Wend. 257.

In the case of *Hoffman* v. *Harrington,* 22 Mich. 55, it is said, with respect to real property, that the owner, having a right of entry, may, since the statutes, enter peaceably upon one who is in possession without right, by the very terms of those statutes, and that a forcible entry is not made unless the tenant is forcibly expelled, and is not complete until the expulsion.

In the case of *Shaw* v. *Hoffman,* 25 Mich. 162, it is said that, in construing our statute, much respect should be given to the decisions of the courts construing like statutes. Chief Justice Christiancy said:

"The statute was not intended to apply to a mere trespass, however wrongful. The entry or detainer must be riotous, or personal violence must be used, or in some way threatened, or the conduct of the parties guilty of the entry or detainer must be such as in some way to inspire terror or alarm in the persons evicted or kept out. In other words, the force contemplated by the statute is not merely the force used against or upon the property, but force used or threatened against persons as a means or for the purpose of expelling or keeping out the prior possessor."

In *Franck* v. *Wiegert,* 56 Mich. 474, it is said:

"If the defendant, at the time he entered into possession of the property, had the right to that possession, and he entered peaceably, such possession would be lawful, and neither the plaintiff nor her husband would have the right forcibly to put him out."

In the case of *Marsh* v. *Bristol,* 65 Mich. 378, 385, it is said:

"Under the law as it existed before the statute, the default of plaintiff under the lease would have justified Bristol in entering and using sufficient force to put him out. The statute changing this right does not make the continuance in possession any less unlawful, but, in the interest of public tranquility, provides against breaking the public peace. In doing so, it adopts the definitions of the law as existing on the subject of forcible entries, which were already indictable in other

cases, and by this prohibition were made indictable in these cases. It provides that a person put out by forcible entry may be restored to possession. 2 How. Stat. §§ 8284, 8285. But where there has not been a forcible entry, it does not forbid retaining possession by force, unless the possession is unlawful, and against the rights of the person kept out."

And, in commenting upon the case of *Hoffman* v. *Harrington*, it is said:

"It was further said that leaving goods on the premises could not prevent making a peaceable entry, as force against property was no breach of the peace, and the force, to make it unlawful, must be against the tenant himself. In that case the property was actually put off, but that was held not to bring it within the statute. It is entirely well settled that unless the tenant is driven off, either by actual force applied to him, or as the only apparent way of avoiding its use against him at the time, he cannot be regarded as forcibly expelled, and there is no forcible entry."

It is also said:

"The object of the statute against forcible entries is not to aid men in violating their obligations, and holding what they have no right to hold, but merely to prevent riotous and forcible measures in breach of the peace. Bristol and his principal were the parties wronged by plaintiff's continuance in possession against right. By going into possession without breaking the peace, Bristol committed no wrong in claiming possession, and in remaining there peaceably; and, this being so, by plaintiff's own showing plaintiff himself was the aggressor to regain a wrongful occupancy. This the law will not permit."

In the case of *Gillespie* v. *Beecher*, 85 Mich. 355, which was a case where the plaintiff was in possession of an hotel as a tenant (which hotel was owned by the defendant) after the lease had expired, it was held the jury should have been instructed that, if they were satisfied from the testimony that the lease had terminated, Mr. Beecher was entitled in the law to the possession of his premises, and that he had a right to enter peaceably into the possession thereof, and that plaintiff and her husband

had no right to remove him by force; that in doing so they made an assault upon him that was unlawful, and he had a right to resist such assault by force sufficient to repel it; and that, if he used no more force than was necessary to repel the assault, he would not be liable to the plaintiff in such action.

We think it follows from the cases cited that the jury should have been instructed that, if the plaintiff had leased the lands from defendant, as testified to by its attorney, and the lease had been terminated for nonpayment of rent, and the defendant, through its attorney, had obtained possession of the house peaceably, it was not liable in this action, unless more force was used by its agents than was necessary to repel the effort of plaintiff to regain possession of the house.

As to the other assignment of eror, in relation to the charge of the court upon the question of damages in relation to the personal property, we think there is testimony in the case that justified the giving of the charge.

Plaintiff's counsel, in his brief, argues that the court erred in charging the jury that the proceeding before the circuit court commissioner ended the relation of vendor and vendee between the parties. As the plaintiff has not appealed, or assigned error in relation to this matter, we are not inclined to discuss the question.

For the reasons stated, judgment is reversed, and a new trial ordered.

LONG, C. J., and GRANT, J., concurred with MONTGOMERY, J. HOOKER, J., did not sit.