T. L. EMRY AND WIFE v. THE ROANOKE NAVIGATION AND WATER-POWER COMPANY.

*Negligence—Trespass—Evidence —Pleading—Damages.*

1. The essential element of negligence is a breach of duty, and in actions thereon it is necessary that the plaintiff should state and prove the facts sufficient to show what the duty is and that the defendant owes it to him.

2. A proprietor of land is not generally responsible for injuries to other persons arising from the condition in which the premises have been left, or from the prosecution of a business in which the owner has a right to engage; and a trespasser on mere licensee cannot recover for such injuries unless the use of the property by the owner was *per se* unlawful, or unless the injuries were inflicted wilfully, wantonly, or through gross negligence of the owner.

3. The plaintiff and defendant made an agreement by which the former, in the event he could not agree with the latter for the rent of certain buildings which he had erected on defendant's land, stipulated that he would, upon six months notice, remove the buildings; the defendant demanded that plaintiff enter into a contract for the rent, and plaintiff declined; thereupon defendant served notice to remove the structures, but the plaintiff failing to do so, defendant endeavored to remove them and was prevented by the force of plaintiff. Soon thereafter the buildings were destroyed by fire occasioned by blasting, by defendant, who was improving property near by; there was no evidence that defendant acted wilfully or recklessly: *Held*, that plaintiff was a trespasser and not entitled to recover damages for the destruction of the buildings.

CIVIL ACTION to recover damages for the alleged negligent burning of plaintiff's mills, caused by the defendant in blasting near said mills, tried at March Term, 1892, of HALI-FAX Superior Court, *Brown, J.,* presiding.

The facts pertinent to the questions discussed and decided by the Court are stated in the opinion.

*Messrs. R. O. Burton* and *L. P. McGehee,* for plaintiffs.
*Messrs. T. N. Hill* and *W. H. Day,* for defendant.

SHEPHERD, J.: The argument before us was based upon the assumption that the defendant, in conducting certain blasting operations on its own land, was guilty of negligence by reason of its failure to exercise ordinary care, and that its liability for the same can only be avoided by establishing contributory negligence on the part of the plaintiffs.

In our opinion, the true principle upon which the case is to be determined lies quite beyond that discussed by counsel, and involves a consideration of the question, not whether there was contributory negligence, but whether the defendant was guilty of any negligence whatever, for which, under the circumstances, it is liable to the plaintiffs.

While there may be some shades of difference in the various definitions of negligence, all the authorities agree that its essential element consists in a breach of duty, and that in order to sustain an action, "the plaintiff must state and prove facts sufficient to show what the duty is and that the defendant owes it to him." 1 Shear. & Red. Neg., § 8; Beach Cont. Neg, 6; Thompson Neg., preface.

A legal duty has been well defined by Dr. Wharton, as "that which the law requires to be done, or forborne to a determinate person, or to the public at large, and is a correlative to a right vested in such determinate person or in the public." Whar. Neg, § 24. "The duty itself arises out of various relationships of life, and varies in obligation under different circumstances. In one case the duty is high and imperative; in another, it is of imperfect obligation. Thus it may be dependent on a mere license to enter upon land, or the bare obligation, to avoid inflicting a wilful injury upon a trespasser, while, upon the other hand, it may be a duty to care for the safety of a specially invited guest, or of a passenger for hire." 16 Am. & Eng. Enc, 412, and the numerous cases cited.

This much being premised, we must now ascertain what duty, if any, was imposed by law upon the defendant in the

present action, and this involves an inquiry into the relation of the parties in respect to the buildings, for the accidental destruction of which the action is brought.

It is conceded that the defendant was the owner of the land upon which the buildings were located, and it appears that, in January, 1887, a suit between the present parties was settled according to the terms of the following agreement, to-wit: " That the said T. L. Emry and wife do further agree that if they cannot agree with said company upon rent for the use of the water and land of the company, upon which the mills and foundry of said Emry and wife, described in the complaint, are situated, then, upon six months notice from the said company, they will remove their mills, foundry and machinery from the lands of said company.   This 14th day of January, 1887."

We cannot concur in the contention of the plaintiffs that, under this agreement, they were entitled to keep their buildings upon the premises, without the payment of rent, until the defendant had improved the canal so as to increase the supply of water.   The agreement contains no such provision, and we feel that we would be doing violence to the ordinary rules of interpretation by so extending its terms beyond the meaning of the plain and unambiguous language employed.   The argument can derive no support from extrinsic circumstances, as it appears that the plaintiffs had been using the water of the canal to some extent by keeping it cleaned out, and that shortly after making the agreement, they proposed to continue the use of the same.   There was, therefore, an existing subject upon which the agreement could presently operate, and it is with reference to this, as well as to any contemplated improvement, that it must be construed. If the actual contract was such as is contended, it is to be regretted that it was not incorporated into the written agreement, as it seems that the conduct of the agent of the plain-

tiffs was influenced by a reasonable misapprehension of the legal effect of the said instrument.

It is further insisted by the terms of the agreement that it was the duty of defendant to entertain in good faith a proposition to fix the rental value of the water and land therein mentioned; and that if it refused to do so, it had no right to require the removal of the buildings, etc. Granting this to be a correct interpretation of the agreement, we are unable to find anything in the testimony which discloses that the defendant arbitrarily or in bad faith declined to consider any such proposition of the plaintiffs. On the contrary, the plaintiffs' agent (who seems to have had full control and management of the whole matter) explicitly testified that before the notice to remove was served on him, the defendant's attorney demanded that the plaintiffs enter into a new contract of rent, and that failing to do so they should remove the buildings. The said agent further testified that in response to the proposition he replied as follows: "I stated that I would go on as I had been, and keep the canal cleaned out for the use of the land and water, but I could not pay rent, as the canal was in bad repair and supplied scarcely any water." The witness also stated that the defendant's attorney declined to accept his proposal, and that they had no further negotiations.

Here then was a distinct offer to "enter into a new contract for rent," and this offer was declined, except upon the terms demanded by the plaintiffs. We fail to perceive how the refusal to accept these terms can be considered as evidence that the defendant was unwilling to make a *bona fide* effort to agree upon a reasonable rental value. If, under the contract, it was the duty of the defendant to make a fair effort to agree, it was surely released from that obligation after the plaintiffs, without hearing any proposal from the defendant, had expressly refused to accede to any other but the previously existing terms. There having been a failure to

111—7

agree as to the rent, the defendant had a right to insist upon the removal of the buildings upon six months notice, as provided in the agreement, and it was not bound to entertain any further propositions on the part of the plaintiffs. Accordingly, a notice to remove the buildings was given, pursuant to the agreement, on the 3d of February, 1887; but notwithstanding this notice the plaintiffs failed to remove the same, and kept them on the defendant's land after they knew that the defendant had commenced its blasting operations, and until they were accidentally destroyed by fire in September, 1890. As early as the 6th of June of that year the defendant complained of the plaintiffs' failure to comply with the notice, and at the same time stated that as the land occupied by the buildings was absolutely necessary for its use, it would proceed to remove them unless the plaintiffs did so in eleven days. At the expiration of that time the defendant attempted to remove the buildings, but was prevented by the plaintiffs from doing so by means of a shot-gun. Without pausing to consider whether the long and unreasonable delay to remove the buildings did not have the effect of vesting the same in the defendant as a part of its free-hold (a point which was waived by the answer), it cannot be questioned, that in their failure to remove them after said notice, and especially in the violent prevention of the defendant from exercising its right of removal, the plaintiffs were trespassers upon the lands of the defendant. Taylor Landlord and Tenant, §§ 62 and 63. This *status* of the plaintiffs is in no way affected by the conversation between their agent and the secretary of the defendant in 1890. Giving full effect to the testimony of the former, it amounted to no more than a parol license to continue the lower mill on the defendant's land in view of the establishment of an oil mill at some indefinite time in the future, which was in fact never done. The license was revocable at the election of the defendant (*Kivett* v. *McKeithan*, 90 N. C., 106; *McCracken* v. *McCracken*, 88 N. C.,

272; *Railroad* v. *Railroad,* 104 N. C., 658), and was actually revoked on the 6th of June, 1890, by the notice given on that day. The plaintiffs had until the 24th of September of that year (the date of the accident) to remove the buildings, and not only failed to remove them, but, as we have seen, forcibly prevented the defendant from doing so. It cannot be seriously insisted that the effect of this conversation was to revive the broken agreement of 1887, so as to entitle the plaintiffs to another six months notice of removal. Much clearer testimony than this is necessary to work a result so restrictive of the rights of a property owner. Besides, the alleged agreement was essentially different from the old one, as it related to and was conditioned upon the establishment of a new industry, and the supply of water was to be furnished " at the same rates as to others." The old agreement, as we have construed it, had reference to the existing state of affairs, and contemplated the present payment of rent of some character.

The plaintiffs then being trespassers upon the land of the defendant, we will now proceed to inquire into the nature of the duty which the latter owed to the former in respect to the said buildings.

It is a well settled principle that a land-owner has a right to the exclusive use and enjoyment of his premises, and that he incurs no liability for injuries caused by its unsafe condition to a person who was not at or near the place of the accident by lawful right, and when the owner has neither expressly nor by implication invited him there. *Sweeny* v. *Railroad,* 10 Allen, 368; *Bennett* v. *Railroad,* 102 U. S., 577; *Carlton* v. *Steel Co.,* 99 Mass., 216; Cooley on Torts, 605 and 606; *Pierce* v. *Whitcomb,* 46 Vt., 127; *Pittsburg* v. *Railroad,* 29 Ohio St., 367; 1 Thompson on Neg., 283 and 303.

The doctrine is thus stated in *Schmidt* v. *Bauer,* 5 La. An. Repts., 530, and notes: " Unless contrivances are placed on such premises with an actual or constructive intent to hurt

intruders, the proprietor is not liable for injury resulting to persons by reason of the condition in which the premises have been left, or from the prosecution of a business in which the owner had a right to engage. *Evansville, etc.,* v. *Griffin,* 100 Ind., 221; *Gillespie* v. *McGowan,* 11 Pa., 144; *Gramlich* v. *Wurst,* 86 Pa., 74; *Cauley* v. *Pittsburg, etc.,* 90 Pa., 398; *McAlpine* v. *Powell,* 70 N. Y., 126; *Hargreaves* v. *Deacon,* 25 Mich., 1; *Burdick* v. *Cheadle,* 26 Ohio, 393; *Indianapolis* v. *Emmelmon,* 6 West Repts., 569."

The foregoing authorities, and many others that could be cited, abundantly sustain the proposition "that a trespasser or mere licensee who is injured by a dangerous machine or contrivance on the land or premises of another, cannot recover damages unless the contrivance is such that the owner may not lawfully erect or use, or when the injury is inflicted wilfully, wantonly or through the gross negligence of the owner or occupier of the premises." *Galveston Oil Co.* v. *Martin,* 70 Texas, 400.

In the leading case of *Larmore* v. *Crown Point Iron Co.,* 101 N. Y., 291, it was held that where one goes upon the premises of another, without invitation, to obtain employment, and is there injured by a defective machine, he cannot recover. ANDREWS, J., in the course of a well reasoned opinion, uses the following language: "The precise question is whether the person, who goes upon the land of another without invitation to secure employment from the owner of the land, is entitled to indemnity from such owner for an injury happening from the operation of a defective machine on the premises, not obviously dangerous, which he passes in the course of his journey, if he can show that the owner might have ascertained by the exercise of reasonable care. We know of no case which goes to that extent." After speaking of the liability of a land-owner to an uninvited person for injuries caused by the setting of spring-guns or dangerous traps on his premises, and also the duty of railroad compa-

nies in running their trains to use proper care in respect to persons on the track, where it has been used by the public without objection; the learned Judge continues: "But in the case before us, there were no circumstances creating a duty on the part of the defendant to the plaintiff to keep the whimsey in repair, and consequently no obligation to remunerate the latter for his injury." It has also been held, where a sign of "No admittance" was placed on a door, that one who entered the room (being of the class meant to be excluded) cannot recover for injuries caused by the negligence in the management of the room, even though no attempt was made to exclude him, nor any further warning given. *Zoebisch* v. *Tarbell*, 10 Allen, 385; *Victory* v. *Baker*, 67 N. Y., 366. So where a trespasser entered the defendant's abandoned freight-house and the wind blew the wall down and injured him. *Larry* v. *Railroad Co.*, 78 Ind., 323. To the same effect is the case of *McDonald* v. *Railroad*, 35 Fed. Rep., 38. There, the defendant corporation in working its coal mine threw out a pile of slack on its own land, the pile presenting the appearance of coal ashes. The land was not fenced, and a stranger in the neighborhood in passing over the slack was burned. It was held that he had no right of action against the corporation.

In *Batchelor* v. *Fortescue*, 47 J. P., 308 (Eng.), the defendant had contracted to do certain work on a plat of ground where buildings were erected and excavations were being made. To carry out the work, he, by his men, worked a steam-winch and crane, with a chain and iron tub attached thereto. The deceased was employed by the owner of the ground to watch the materials and buildings. He had no duty to take part in the excavating, and it was no part of his business to stand under the tub as it was raised. While watching the men working, the tub fell on his head and he was killed. It was held that the defendant was not liable." "The deceased was there to watch the material and buildings.

He had no business with the machinery, nor any duty to watch the defendant's men at work. He was thus in a place where he had no right to be, and was a mere licensee to whom the defendant owed no duty."

It is true that the general principles we have enunciated are subject to some qualifications, under possible circumstances, in favor of certain licensees, or purely technical trespassers, and of persons walking on a railroad track, as in *Clark* v. *Railroad*, 109 N. C., 430, and *Deans* v. *Railroad*, 107 N. C., 686. Here, on the border-land between the doctrine we have stated, and that of contributory negligence, there is some obscurity and conflict in the authorities. But however that may be, there is no difficulty in its application to a case like the present, where, in the eyes of the law, the plaintiffs must be regarded as wilful trespassers. The authorities are practically unanimous in holding that, in favor of trespassers of this character, the land-owner owes no duty to exercise ordinary care in the use of his premises or in the conduct of lawful operations thereon. If no such duty existed in the foregoing cases, which have been cited by way of illustration, and in which the lives of human beings were imperiled, it would be difficult, indeed, to understand how it could be imposed upon the defendant in this action. It would be a strange result if one who is involuntarily made the custodian of another's property by the coercive power of a shotgun, should be held liable for an accident to such property because of his failure to take all of the precautions which would commend themselves to a prudent man. It is fully settled by the authorities above mentioned that the duty of a land-owner, under such circumstances, can be no greater than to abstain from what is very generally called "wanton or wilful negligence." The defendant had a right to improve its property, and, in blasting for that purpose, it was engaged in a lawful occupation. There is nothing to show that its servants acted wilfully, wantonly or recklessly, and there is

no testimony tending to prove that after they discovered the accident, they could, by ordinary care, have prevented the destruction of the building. Certainly there is nothing to indicate the same indifference on their part as that shown by the plaintiff's agent, who, although he had his hands present, made no effort to arrest the flames, and, indeed, stated that, as he did not cause the fire, he would not assist in putting it out and "that it might burn." The defendant, therefore, having been guilty of no "wilful or wanton negligence" (the abstaining from which constituted its only duty under the circumstances), it must follow that it cannot be held liable for the accidental destruction of the plaintiff's property.

We have carefully considered the other exceptions, and are of the opinion that they are without merit. The judgment must be

Affirmed.