STATE

v.

Richard WALTON.

No. 91–417–C.A.

Supreme Court of Rhode Island.

Oct. 29, 1992.

Neil F.X. Kelly, Asst. Atty. Gen., Providence, for plaintiff.

Barbara Hurst, Chief Appellate Atty. Office of Public Defender and Richard Casparian, Public Defender, Providence, for defendant.

OPINION

WEISBERGER, Justice.

This case comes before us on the defendant's appeal from a judgment of conviction entered in the Superior Court holding the defendant guilty of murder in the second degree. The defendant's appeal was

filed September 26, 1990, and after waiver of a prebriefing conference, was placed upon the regular calendar for full briefing and argument. We vacate the conviction and remand the case for a new trial. The facts of the case insofar as pertinent to this appeal are as follows.

At the time of the events leading up to the homicide, defendant, Richard Walton, occupied a room in a three-story tenement house at 256–58 Carpenter Street in Providence. He had been a resident of one of the rooms on the second floor for approximately two years. On Saturday, April 15, 1989, defendant had asked permission to entertain one Michael Murphy in his room. Rooming-house rules required such prior approval. Permission was granted by Maryann Caraman (Caraman), the manager of the building.

On Monday morning a body was discovered in a vacant lot across Knight Street which was contiguous to the side of the tenement house. Caraman recognized the dead person as Michael Murphy (Murphy). When she attempted to go into defendant's room later in the day to inspect it, she was told by defendant that the room was messy and that there was blood in the room. She personally observed blood and puddles of water on the stairs of the tenement building.

Testimony given by defendant disclosed that Murphy had visited defendant in his room and had shared some beer provided by defendant during the evening. When the supply of beer had become exhausted, Murphy requested that defendant buy more, but defendant refused. Murphy then picked up a knife from a silverware box in the room and started to poke and jab at defendant with the knife. The defendant had first thought that Murphy was joking, but as the poking continued, defendant noted that Murphy was getting more and more angry. Murphy then threatened defendant, saying that he was going to die. At this point defendant ordered Murphy to leave, but Murphy ignored the order.

Then Murphy charged at defendant, uttering oaths and profanities. The defendant, realizing that the attack was serious,

seized a second knife from the silverware box. A struggle ensued during which defendant dropped his knife but wrested Murphy's knife from his hand and stabbed Murphy a number of times. The defendant claims that he went into the bathroom and vomited. He was afraid to tell anyone what had happened.

For a day and a half he left the body in his second-floor room but was unable to sleep on Saturday or Sunday night. He spent only a few moments in the room because of the presence of the body. On Monday he dragged the body to a nearby lot, covered it with garbage bags, and then went back to the room.

The medical examiner, Dr. Richard Callery, testified by deposition that defendant died from stab wounds. He found a total of twelve stab wounds, some of which were superficial but others were fatal. The deepest wound had penetrated the body by seven to nine inches. The doctor noted that Murphy's blood-alcohol level was .29 grams percent at the time of the autopsy. The doctor estimated that at the time of the autopsy the victim had been dead for approximately twenty-four to thirty-six hours.

The defendant claimed that he had stabbed Murphy in self-defense. In support of his appeal, defendant has raised two issues, only one of which need be considered by the court. The issue that is controlling in this case is whether the trial justice erred in holding that defendant was required to attempt to retreat from his dwelling place before employing deadly force against Murphy. The trial justice in his instructions concerning self-defense stated that "before resorting to the use of deadly force the person attacked must retreat if he or she is consciously aware of an open, safe, and available avenue of escape." The trial justice then referred to G.L.1956 (1981 Reenactment) § 11-8-8, as amended by P.L.1984, ch. 212, § 1, which provides as follows:

"Injury or death—Defense.—In the event that any person shall die or shall sustain a personal injury in any way or for any cause while in the commission of

any criminal offense enumerated in §§ 11–8–2—11–8–6, inclusive, it shall be rebuttably presumed as a matter of law in any civil or criminal proceeding, that the owner, tenant or occupier of the place wherein the offense was committed, acted by reasonable means in self defense and in the reasonable belief that the person engaged in said criminal offense was about to inflict great bodily harm or death upon him or any other individual lawfully, in the place where said criminal offense was committed. There shall be no duty on the part of an owner, tenant or occupier to retreat from any person engaged in the commission of any criminal offense enumerated in §§ 11–8–2—11–8–6, inclusive."

The trial justice correctly instructed the jury that this statute created an exception to the obligation to retreat and created a presumption of self-defense in respect to the use of fatal force against any person who broke into and entered premises for the purpose of committing certain specified felonies either during the daytime or during the night and in certain instances wherein the presumption would arise in regard to criminal intruders, regardless of their intent. The trial justice correctly instructed the jurors that the facts of this case did not give rise to the statutory presumption since the victim was a social guest and had legally entered the apartment.

Although defendant agrees that the statutory presumption set forth in § 11–8–8 was not applicable to the facts of this case, he argues that under the common law, he was not obliged to retreat in the circumstances of this case. He argues that although Murphy entered his dwelling room as a social guest, at the time he attacked

defendant he was no longer a social guest but a trespasser since defendant had ordered Murphy to leave. Consequently the narrow question presented is whether a person who is attacked in his dwelling by a trespasser who had earlier been a social guest is required to retreat from the dwelling before he is permitted to use fatal force to repel an attack that he reasonably believes has placed him in imminent peril of death or serious bodily harm.

A majority of American jurisdictions recognize the so-called Castle Doctrine pursuant to which a person attacked in his dwelling is not required to retreat before using fatal force to repel the attack. *See State v. Guillemet*, 430 A.2d 1066, 1069 n. 2 (R.I. 1981). This court has not adopted the Castle Doctrine in its entirety. Indeed, in *State v. Quarles*, 504 A.2d 473 (R.I.1986), we specifically declined to dispense with the duty of retreat in a situation wherein the defendant was allegedly attacked by a cooccupant of his dwelling. In so holding we cited *Commonwealth v. Shaffer*, 367 Mass. 508, 326 N.E.2d 880 (1975), which rejected the Castle Doctrine. In citing *Shaffer*, we pointed out that the Massachusetts Legislature had altered its holding as it applied to unlawful intruders. *See* Mass. Gen.Laws Ann. ch. 278, § 8A (West Supp. 1992).[1] We also referred to § 11–8–8 as the only exception to the obligation to attempt retreat before using fatal force in one's defense.

Our next consideration of the Castle Doctrine came in *State v. Fetzik*, 577 A.2d 990 (R.I.1990). In that case John Almeida had entered the dwelling house of the defendant, Walter Fetzik, in circumstances not within the provisions of § 11–8–8. However, Fetzik ordered Almeida to leave, and when he did not, Fetzik obtained a shotgun,

---

**1.** In effect the Massachusetts statute has adopted the Castle Doctrine save for limited exceptions such as cohabitants. This statute reads as follows:

"Killing or injuring a person unlawfully in a dwelling; defense

In the prosecution of a person who is an occupant of a dwelling charged with killing or injuring one who was unlawfully in said dwelling, it shall be a defense that the occupant was in his dwelling at the time of the

offense and that he acted in the reasonable belief that the person unlawfully in said dwelling was about to inflict great bodily injury or death upon said occupant or upon another person lawfully in said dwelling, and that said occupant used reasonable means to defend himself or such other person lawfully in said dwelling. There shall be no duty on said occupant to retreat from such person unlawfully in said dwelling."

which he fired when Almeida seemed to lunge at him in circumstances that caused the defendant to believe that he was reaching for a knife.

In considering the trial justice's instruction to the jury on the issue of self-defense, we again examined the so-called Castle Doctrine and recognized that a majority of jurisdictions hold that a person who is without fault and is attacked within his own dwelling may stand his ground and defend himself, even if a retreat could be safely accomplished. *Fetzik*, 577 A.2d at 994 (citing *Hedges v. State*, 172 So.2d 824, 827 (Fla.1965); *Gainer v. State*, 40 Md.App. 382, 388, 391A.2d 856, 860–61 (1978)). We went on to hold that in the circumstances of that case, although the intruder had entered under conditions not specifically contemplated by § 11–8–8, the defendant was entitled to an instruction that he was under no duty to retreat when the assailant had entered the defendant's dwelling without permission.

■ We are now confronted with the further question concerning whether there is a duty to retreat when someone has entered the dwelling legally in the first instance as a social guest but has refused to leave when ordered to do so.

■ We believe that our analysis in *Fetzik* went beyond the provisions of § 11–8–8, which dispenses with the requirement of retreat when one enters a dwelling feloniously. In *Fetzik* the intruder had not entered feloniously but had certainly entered without the permission of the occupant. Thus he was a trespasser. In effect our holding was that an occupant of a dwelling, when attacked in his home by a trespasser, does not have the duty to retreat but may stand and repel the attack by use of reasonable force, including fatal force if necessary, to avoid death or great bodily harm.

■ It is a familiar principle that one who enters a dwelling or a business premises legally but refuses to leave when ordered to do so, becomes a trespasser. *See, e.g., Smith v. Detroit Loan and Building Association*, 115 Mich. 340, 73 N.W. 395 (1897); *State v. O'Brien*, 784 S.W.2d 187 (Mo.Ct.App.1989); *Whitney v. Swett*, 22 N.H. 10 (1850); *Emry v. Roanoke Navigation & Water–Power Co.*, 111 N.C. 94, 16 S.E. 18 (1892). This principle applies to both quasi-public premises and private dwellings. *See State v. Steinmann*, 20 Conn.App. 599, 569 A.2d 557, appeal denied, 214 Conn. 806, 573 A.2d 319 (1990); *Taylor v. Action Household Rentals, Inc.*, 351 So.2d 865 (La.Ct.App.1977); *Commonwealth v. Johnston*, 438 Pa. 485, 263 A.2d 376, 41 A.L.R.3d 576 (1970).

■ In this case, at the time of the attack by Murphy and the repelling of that attack by defendant, Murphy had become a trespasser. As suggested by our holding in *Fetzik*, one who is attacked in his dwelling by a trespasser is not subject to the duty to retreat before the use of fatal force. We understand that the trial justice may well have been misled by the language of our opinion in *State v. Quarles, supra*. Nevertheless, we have the duty to clarify our doctrine relating to retreat as we are confronted with the variety of circumstances that may give rise to the claim of self-defense. We have definitely held that one is not absolved from the duty of retreat if attacked by a cotenant or cohabitant, *Quarles*. We have held that one has no duty to retreat if attacked by an intruder/trespasser. We now hold that one who is attacked in his dwelling by one who initially entered as a social guest but who has become a trespasser by remaining after being ordered to leave is similarly absolved from the duty to retreat.[2]

---

2. We are persuaded that the Castle Doctrine should be applicable even to social or business guests. New Jersey, like Rhode Island, has recognized the exception of the general common-law rule to require retreat if practicable when the assailant is one who resides in the same dwelling or, because of coownership, is equally entitled to reside there. *State v. Felton*, 180

N.J.Super. 361, 434 A.2d 1131 (1981); *State v. Lamb*, 71 N.J. 545, 366 A.2d 981 (1976). However, the New Jersey court points out that generally there is no duty to retreat within one's dwelling before an attack by someone not a coowner, or cooccupant. *Felton*, 180 N.J.Super. at 365, 434 A.2d at 1133 (citing *Conner v. State*, 361 So.2d 774 (Fla.Dist.Ct.App.1978), cert. de-

The trial justice's instruction in respect to the duty to retreat was not consistent with this holding. Since it is obvious from the evidence that the defendant did not attempt to retreat prior to utilizing fatal force, the instruction which set forth such a duty was prejudicial to defendant. In light of our clarification of the retreat doctrine, defendant should have an opportunity to present his self-defense theory at a new trial.

Since our holding in respect to this issue is controlling, we need not consider the other issues raised by the defendant.

For the reasons stated, the appeal of the defendant is sustained. The judgment of conviction is hereby vacated. The papers in the case may be remanded to the Superior Court for further proceedings.

nied, 368 So.2d 1364 (Fla.1979)); *Commonwealth v. Walker,* 447 Pa. 146, 288 A.2d 741 (1972). This holding seems in accord with the great weight of authority and would certainly apply to an attack by a social guest. *See* annot. 100 A.L.R.3d 532 (1980). Consequently we are of the opinion that one who is attacked either in the home or on business premises by a social or a business guest is not required to retreat before using all necessary force, including deadly force, in repelling the attack in order to avoid imminent danger to his or her own life or great bodily harm. *Kontos v. State,* 363 So.2d 1025 (Ala.Crim.App.1978); *Gainer v. State,* 40 Md. App. 382, 391 A.2d 856, 100 A.L.R.3d 522 (1978); *People v. Smith,* 54 Mich.App. 652, 221 N.W.2d 464 (1974); *Commonwealth v. Eberle,* 474 Pa. 548, 379 A.2d 90 (1977). It should be noted that a guest or an invitee who violently attacks the owner or occupier of a dwelling or business premises would by that very act violate the license to be upon the premises.