Z. W. HAYNES, Administrator of John W. Haynes, deceased, v. THE
RALEIGH GAS COMPANY.

*Action for Damages — Death Resulting from Wrongful Act —
Negligence—Prima Facie Case—Burden of Proof—Contrib-
utory Negligence—Degree of Care to be Exercised by Persons
or Corporations Using Electric Wires on Streets.*

1. It is the duty of a corporation or others using the streets of a city, by
permission of the municipal authorities, for purposes of private
gain, to so conduct their business as not to injure persons passing

along such streets, and to keep the highways occupied by their apparatus in substantially the same condition as to convenience and safety as they were in before such occupancy.

2. Negligence being a failure of duty, proof that a "live wire" carrying a deadly current of electricity was hanging over and lying upon a sidewalk, and that it had been placed above the street by and was the property of the defendant corporation and was under the control of the servants of the latter, and that by contact with such wire a person, having a right to be on the street, was killed, constituted a complete *prima facie* case of negligence, and the burden was put upon the defendant to show that the wire was not down through any negligence of itself or its servants or agents.

3. Where, in the trial of an action for an injury resulting in death and caused by the alleged negligence of defendant, it appeared that the deceased, an intelligent boy ten years old, while walking on the sidewalk of a street, grasped a "live" guy wire hanging to the street and belonging to the defendant, and was killed by the contact, and there was no visible indication that the wire was charged with electricity: *Held*, that the trial Judge should have told the jury that there was no evidence of contributory negligence on the part of the deceased.

4. The utmost degree of care in the construction, inspection and repair of wires and poles is required of those who are allowed to place above the streets of a city wires charged or likely to be charged with a deadly current of electricity, so that travelers along the highways may not be injured by defective appliances.

5. The fact that an electric street railway company had caused it to be stated in a newspaper published in the city where it operated that its electric current was not a deadly one did not excuse an electric light company whose wires were stretched on the same street from using proper care in insulating its own wires against those of the street railway, and the admission of such statement on the trial of an action against the electric light company for damages caused by its negligence was erroneous, because of the irrelevancy of such testimony.

CIVIL ACTION by Z. W. Haynes, administrator of John W. Haynes, against the Raleigh Gas Company for damages for causing the death of plaintiff's intestate and son, tried at October Term, 1893, of WAKE Superior Court, before *Shuford, J.*, and a jury.

The damages were laid at $10,000.   The pertinent facts are stated in the opinion of Associate Justice BURWELL.

The issues submitted were as follows:

"1. Was the plaintiff's intestate, John W. Haynes, killed by the negligence of the defendant?

" 2. Did the plaintiff's intestate by his own negligence contribute to the injury?

"3. What damage has plaintiff administrator sustained?"

The jury responded " No " to the first issue, and from the judgment thereon for the defendant the plaintiff appealed.

*Messrs. Battle & Mordecai, W. N. Jones* and *Strong & Strong,* for plaintiff (appellant).

*Messrs. Busbee & Busbee, Armistead Jones* and *R. O. Burton,* for defendant.

BURWELL, J.: John W. Haynes, the intestate of the plaintiff, was about ten years of age. He was "a very healthy, intelligent, moral and industrious boy, well educated for his age."   On the morning of November 15, 1892, he assisted his older brother, who was a carrier for a newspaper, and when returning home, about seven o'clock, he took hold of a wire on or near the sidewalk over which he was passing and was killed by an electric current.   The place where this occurred was on North street, not far from its intersection of Blount street, in the city of Raleigh. The cause of his death is admitted, and also the fact that the deadly current came from the " feed wire " of the street railway company, whose line was constructed along Blount street, as were also the electric light wires of the defendant.   One of the defendant's poles stood on Blount street and was supported by three guy wires—one attached to a tree on Blount street, and the other two to trees on

North street. The first of these guy wires (the one that was attached to the tree on Blount street) crossed and was in contact with the "feed wire" of the railway company. The longer one of the other two had become detached from the tree on North street and was hanging to the ground. The current passed along these two guy wires and killed the boy as soon as he grasped the one that had fallen on or near the sidewalk.

These facts were testified to by the plaintiff's witnesses and seem not to have been controverted.

Among the special instructions asked by plaintiff was the following: "Upon the evidence of the plaintiff, if believed, there is a presumption of negligence upon the part of the defendant, and in that case the burden is upon the defendant to show that there was no negligence on its part." His Honor refused so to instruct the jury, and the plaintiff excepted.

Pretermitting for the present the consideration of the question whether the boy was guilty of contributory negligence in taking hold of the wire, we are brought by this exception to the inquiry, Does the expression *res ipsa loquitur* apply to the state of facts set out above, and do those facts make out a *prima facie* case of negligence against the defendant, and cast upon it the burden of showing that it was not negligent?

Argument and authority are not needed to show that those who use the streets of a city, by permission of those who have power to grant such privilege, for purposes of private gain, owe to persons upon such streets the duty of so conducting their business as not to injure them. To speak particularly of the matter now under consideration, the defendant company, using the streets of the city of Raleigh for its purposes as it was allowed to do, owed to the deceased the duty of keeping out of his way, as he went

about his business and to his home, all its wires, and especially the duty of preventing his exposure to contact with any wire placed in the streets by it that carried a current of electricity. It was the duty of the defendant to keep the highways along which it put its poles and wires substantially in the same condition as to convenience and safety as they were in before it constructed its lines along the streets.

Negligence has been said to be a failure of duty. Proof that there was a "live" wire (carrying a deadly current) down in the highway surely raised a presumption that some one had failed in his duty to the public. When to this was added proof that this death-carrying wire was put above the street by the defendant and was its property and under the management and control of its servants, and that by contact with that wire the deceased, having a right to be on the street, was killed, a complete *prima facie* case of negligence was made out, and the burden was cast upon the defendant to show that this "live" wire was in the street through no fault of its servants and agents.

In *Aycock* v. *Railroad*, 89 N. C., 321, where a plaintiff sought to recover damages for the burning of his property, fire having been communicated to it by sparks from an engine on the defendant's road, Chief Justice SMITH, discussing "the question as to the party upon whom rests the burden of proof of the presence or absence of negligence where only the injury is shown, in case of fire from emitted sparks," declares that this Court will "abide by the rule so long understood and acted on in this State; not alone because of its intrinsic merit, but because it is so much easier for those who do the damage to show the exculpating circumstances, if such exist, than it is for the plaintiff to produce proof of positive negligence"; and he adds that "the servants of the company must know and be able to explain the transaction, while the complaining party may not; and

it is but just that he should be allowed to say to the company, 'You have burned my property, and if you are not in default show it and escape responsibility.'" This is affirmed in *Moore* v. *Parker*, 91 N. C., 275, where it is said that a *prima facie* case of negligence being thus made out against the defendant, he must produce proof of care on his part, or of some extraordinary accident that rendered care useless, in order to rebut the presumption.

Guided by the principle announced in these cases, we come to the conclusion that this plaintiff should have been allowed to say to this defendant: "The wire you put in the street killed my son while passing along the highway, as he had a right to do. If you are not in default, show it and escape responsibility."

Numerous authorities might be cited to sustain our conclusion upon this point, the cases being strictly analogous to this one. But we content ourselves with a reference to Ray on Negligence of Imposed Duties, page 145; Wood's R. R. Law, 1079; Witaker's Smith on Negligence, 423. The last mentioned author says (p. 422): "If the accident is connected with the defendant, the question whether the phrase '*res ipsa loquitur*' applies or not becomes a simple question of common sense." It seems to us that there is nothing in the relation of the deceased to the defendant or in any of the circumstances attending the incident of his death to prevent the rigid application here of the rule announced by Judge GASTON in *Ellis* v. *Railroad*, 2 Ired., 138, and re-affirmed, as stated above, in *Aycock* v. *Railroad*, *supra*.

Thus far, in the consideration of this matter, we have left out of view the contention of the defendant that the plaintiff's own evidence disclosed the fact that his intestate was guilty of contributory negligence, or at any rate that the facts so established, taken in connection with other facts

which defendant's witnesses testified to, if found by the jury, convicted him of contributory negligence; and we have also kept out of view the contention of the plaintiff that there was no evidence of contributory negligence on the part of the deceased. His Honor was asked so to tell the jury, and he refused so to instruct them.

In this State, by statute, the burden of showing contributory negligence in this action is thrown on the defendant. What is negligence is a question of law to be declared by the Court. *Emry* v. *Railroad*, 109 N. C., 589, and cases cited. It was incumbent on the defendant, therefore, to show facts, either admitted or proved by the plaintiff, or testified to by his own witnesses, and found by the jury, from which the Court would draw the legal inference that the deceased was negligent and direct the jury to render a verdict declaratory of this legal inference, they having first determined that all the disputed facts pertaining to this part of the controversy were established by a preponderance of the testimony.

After a careful examination of all the evidence adduced on the trial, and after a full consideration of the argument of the able counsel for the defendant, we are clearly of the opinion that there was no evidence of contributory negligence, and his Honor should so have told the jury.

A child is held to such care and prudence as is usual among children of his age and capacity. *Murray* v. *Railroad*, 93 N. C., 92. The defendant contends that the deceased was ten years of age, "a very healthy, intelligent, moral and industrious boy." Let us assume this to be true. As he returned to his home the morning of his death, passing along the streets of the city, he was trespassing on no one's property. He was walking where he had a right to walk—not by mere permission or invitation, but because he as one of the public had an absolute right so to do.

14

The wire was on the sidewalk. Only one witness saw him when "he took hold of the wire and the wire threw him in the ditch." That witness testified that "he did not have to reach for it; he just reached out his hand and took it; he did not have to stoop." No witness testified that there was anything from which even an adult could have inferred that this wire was carrying a deadly current of electricity, or indeed any current at all. True, the witness who saw him grasp the wire, when he came to his rescue, saw the fiery indications of the passing of the current from the wire to his hand, and several witnesses deposed that after the accident and the throwing of the wire into a yard where there was wet grass they noted that the wire was " steaming " at the point where one of its coils touched the sidewalk, and also at its extemity in the yard. Grant this to be true, and yet there is not, as it seems to us, any evidence that it was "steaming" when the deceased caught the wire, or, if it was, that its " steaming " was such as to carry to a boy passing along a warning that he must not touch it. We should be very loth to declare an adult guilty of negligence for grasping a wire such as this one under circumstances such as the defendant contends surrounded the deceased. We certainly cannot declare that this boy, whose conduct must be judged with due regard for his boyish nature and habits, negligently caused his own death. The instruction that "upon the evidence the plaintiff's intestate was not guilty of contributory negligence" should have been given.

It follows, from what has been said, that as the case was presented at the trial his Honor should have told the jury to answer the second issue No, and should have told them to answer the first issue Yes, if they believed the plaintiff's evidence, unless the *prima facie* case of negligence made out against the defendant was rebutted. It is said in *Moore*

v. *Parker, supra,* that proof of care on the part of the defendant, or of some extraordinary accident which renders care, useless, is required to rebut the presumption. Inasmuch as there must be a new trial for the error above stated, it may be well to declare what degree of care is required of the defendant.

It is due to the citizen that electric companies that are permitted to use for their own purposes the streets of a city or town shall be required to exercise the utmost degree of care in the construction, inspection and repair of their wires and poles, to the end that travelers along the highway may not be injured by their appliances. The danger is great, and care and watchfulness must be commensurate to it. Passengers on railroad trains have a right to expect and require the exercise by the carrier of the utmost care, so far as human skill and foresight can go, for the reason that a neglect of duty in such case is likely to result in great bodily harm and sometimes death to those who are compelled to use that means of conveyance. "As the result of the least negligence may be of so fatal a nature the duty of vigilance on the part of the carrier requires the exercise of that amount of care and skill in order to prevent accidents." Ray on Neg., *supra,* p. 53.

All the reasons that support the rigid enforcement of this rigid rule against the carrier of passengers by steam, apply with double force to those who are allowed to place above the streets of a city wires charged with a deadly current of electricity or liable to become so charged. The requirement does not carry with it too heavy a burden. Human skill can easily place wires and poles so that they will not break and fall, unless subjected to some strain that could not be anticipated, and it can as readily prevent the possibility under ordinary circumstances of the contact of wires that should not be allowed to touch one

another. There was error in allowing the defendant to prove that there was published in one of the city newspapers "a general statement" by an electric street-railway company to the effect that its current was not a deadly one—was not fatal to human life. That fact could not excuse the defendant. If it acted upon such a statement, and without further inquiry or examination conducted itself in the insulation of the wires as if the statement was true, that was to be negligent, for in such an affair to be mistaken and in error is to be careless. The fact that such a publication was made was irrelevant to the issues in the cause. What has been said seems sufficient to guide the next trial of the case.          New Trial.