KLEEBAUER et ux. v. WESTERN FUSE AND EXPLO-
SIVES COMPANY.*

.S. F. No. 2419; June 10, 1902.

69 Pac. 246.

**Nuisance.—The Maintenance of a Powder Magazine** wherein was kept five thousand pounds of gunpowder within two hundred and fifty yards of numerous dwellings was a nuisance per se.

**Explosion—Liability of Corporation for Act of Employee.—** A corporation keeping five thousand pounds of gunpowder in a magazine is liable for the damages occasioned to near-by dwellings by an employee maliciously setting fire to the gunpowder, the maintenance of the magazine being a nuisance.[1]

APPEAL from Superior Court, City and County of San Francisco; Wm. R. Daingerfield, Judge.

Action by Frederick Kleebauer and wife against the Western Fuse and Explosives Company, a corporation. From a judgment in favor of the plaintiffs the defendant appeals. Affirmed.

Wright & Lukens for appellant; Reddy, Campbell & Metson for respondents.

---

*For subsequent opinion in bank, see 138 Cal. 497, 94 Am. St. Rep. 62, 60 L. R. A. 377, 71 Pac. 617.

[1] Cited in McGehee v. Norfolk & S. Ry. Co., 147 N. C. 151, 24 L. R. A., N. S., 119, 60 S. E. 915, where the court says: "The plaintiff fails to make a case of actionable negligence, because in respect to the conditions existing and the manner in which he sustained damage he shows no breach of a legal duty to him. It is by no means clear that the dynamite, stored as described in the complaint, was, in the ordinary acceptation of the term, a public nuisance."

Cited in the note in 113 Am. St. Rep. 1014, on the presumption of negligence from the happening of an accident.

COOPER, C.—This action was brought to recover damages for injuries to plaintiff's house, caused by reason of the explosion of a large quantity of gunpowder on defendant's premises. The case was tried with a jury, and a verdict returned for plaintiff, upon which judgment was entered. Defendant made a motion for a new trial, which was denied, and this appeal is from the judgment and order. The facts are substantially as follows: For several years prior to the explosion the defendant had been engaged in the business of manufacturing fuse, and had its plant and magazine in the village of Melrose. Within a radius of two hundred and fifty yards of the magazine there were many dwelling-houses, of which plaintiffs' was one, the vicinity being regularly laid out in streets. Defendant had in its magazine, immediately prior to the explosion, about five thousand pounds of gunpowder, being the amount it usually kept on hand. In the employ of defendant was a Chinaman, whose business it was to carry powder from the magazines to the hoppers, from which the powder was distributed. The Chinaman, during a quarrel with one of his countrymen, killed him, and then fled into the magazine to evade arrest. While the officers of the law were making an attempt to arrest him, he willfully, and with murderous intent, set fire to the magazine, exploding it, killing some of the officers and himself, and causing the injury to plaintiff's dwelling. The court below instructed the jury that if the defendant kept and stored in its magazine a large quantity of gunpowder in a thickly settled neighborhood, and so near thereto that its explosion was liable to injure persons, dwellings or other property in the neighborhood, the so keeping said powder was a nuisance; and the jury, by its verdict, found by implication that it was a nuisance.

It is settled by the great weight of authority that the keeping of a dangerous explosive, such as gunpowder or nitroglycerine, in large quantities, in a public place, or in close proximity to buildings inhabited by human beings, is a nuisance per se: Webb, Pol. Torts, note on page 503, and cases cited; Cheatham v. Shearon, 1 Swan, 213, 55 Am. Dec. 734; Myers v. Malcolm, 6 Hill, 293, 41 Am. Dec. 744; Chicago etc. Coal Co. v. Glass, 34 Ill. App. 364; Weir's Appeal, 74 Pa. 230; McAndrews v. Collerd, 42 N. J. L. 189, 36 Am. Rep. 508. In the latter case it is said: "The keeping of gunpow-

der, nitroglycerine, or other explosives, in large quantities, in the vicinity of a dwelling-house or place of business, is a nuisance per se, and may be abated as such by action at law or injunction in equity." And in this case the question was properly left to the jury under appropriate instructions: Heeg v. Licht, 80 N. Y. 579, 36 Am. Rep. 654; Rudder v. Koopman, 116 Ala. 333, 37 L. R. A. 489, 22 South. 601. Therefore the defendant was guilty of maintaining a nuisance in keeping the large quantity of powder in so populous a neighborhood.

Is it liable to plaintiff for damages caused by the explosion, that being caused by the criminal act of the Chinaman? We are of opinion that it is, and the fact that the Chinaman, by his act, was the direct cause can make no difference. The fact that defendant maintained the nuisance was a violation of legal duty. If it had not maintained the nuisance, the damage would not have occurred. Powder is regarded by all the authorities as a destructive agent, liable to explosion by contact with the smallest spark, and often by the elements. The maxim, "Sic utere tuo ut alienum non laedas," applies. The plaintiffs had the right to the free use and enjoyment of their property. The defendant, in maintaining the nuisance upon its own land, for its own profit, caused the damage. The thing constituting the nuisance was the property of defendant, the Chinaman its servant, and, although he turned aside from his employment in setting fire to the powder, yet the defendant, on principles of public policy, must be held liable. The defendant's violation of legal duty and willful disregard of the property rights of others indirectly caused the damage. The principle is correctly stated by Mr. Justice Blackburn in Fletcher v. Rylands, 1 Ex. 265: "We think the true rule of law is that the person who, for his own purposes, brings on his lands and collects and keeps there anything likely to do mischief if it escapes, must keep it at his peril, and, if he does not do so, is prima facie answerable for all the damage which is the natural consequence of its escape. . . . . But for his bringing it there, no mischief could have accrued, and it seems but just that he should, at his peril, keep it there, so that no mischief may accrue, or answer for the natural and anticipated consequences. And upon authority this, we think, is established to be the law whether the things so brought be beasts, or water, or filth, or stenches."

This language was repeated and approved by Lord Cranworth on appeal: 3 H. L. Cas. 330. The same reason applies to explosives. The party bringing upon his premises, in the vicinity of other dwelling-houses, large quantities of powder or other explosives, does so at his peril. In this case, if the defendant had not brought and kept the powder on its premises, the Chinaman could not have exploded it. In 1 Hale P. C. 430, Lord Hale states that where one keeps a beast, knowing its nature or habits are such that the natural consequences of his being loose is that he will harm men, the owner "must at his peril keep him up safe from doing hurt, for, though he use his diligence to keep him up, if he escape and do harm, the owner is liable to answer damages." We can see no difference in principle whether the thing be an animal or a dangerous explosive. The defendant knew the nature of the thing kept, its liability to explosion, and it kept it at its peril. The American authorities, with hardly an exception, follow the doctrine laid down in the courts of England. It is said in 1 Wood on Nuisance, third edition, page 183: "So the keeping of gunpowder, nitroglycerine, damp jute, or other explosive substance, in large quantities, in the vicinity of one's dwelling-house or place of business, is a nuisance, and may be abated as such by action at law, or by injunction from a court of equity; and, if actual injury results therefrom, the person keeping them is liable therefor, even though the act occasioning the explosion is due to other persons, and is not chargeable to his personal negligence." In the case of Heeg v. Licht, 80 N. Y. 581, 36 Am. Rep. 654, the powder in defendant's magazine exploded from an unknown cause. The action was for damages caused by the explosion. In the opinion the court said: "The fact that the magazine was liable to such a contingency, which could not be guarded against or averted by the greatest degree of care and vigilance, evinces its dangerous character, and might, in some localities, render it a private nuisance. In such a case the rule which exonerates a party engaged in a lawful business when free from negligence has no application." In a later case (Prussak v. Hutton, 30 App. Div. 66, 51 N. Y. Supp. 761) the powder magazine was so near to dwelling-houses that it was held to be a nuisance per se, and the owner liable, although the explosion was caused by lightning. The court said: "The defendants at least were not free from fault

which co-operated to produce the result." In another case by a different plaintiff for damage caused by the same explosion (Cibulski v. Hutton, 47 App. Div. 107, 62 N. Y. Supp. 167) the court again affirmed the rule, saying: "The recovery was not placed upon the ground of defendants' negligence, but upon evidence sufficient to support the finding of the jury that the powder-mill, in the place where it was situate, with reference to the dwelling in which the plaintiff in that case was injured, was a nuisance." In Chicago etc. Coal Co. v. Glass, 34 Ill. App. 364, the damage was caused by an explosion of the powder magazine by lightning, and the defendant was held liable. The court said: "We do not think it necessary that the proof should show any immediate and direct agency on the part of the appellant causing the injury, when the original or primary cause was the establishment of a public nuisance by it." In a later case (Laflin etc. Powder Co. v. Tearney, 131 Ill. 325, 19 Am. St. Rep. 34, 7 L. R. A. 262, 23 N. E. 390), in which the explosion was caused by lightning, the court said: "As a general rule, the question of care or want of care is not involved in an action for injuries resulting from a nuisance. If actual injury result from the keeping of gunpowder, the person keeping it will be liable therefor, even though the explosion is not chargeable to his personal negligence." In Cheatham v. Shearon, 1 Swan, 213, 55 Am. Dec. 734, the defendant was held liable for damages by the explosion of a powder magazine by lightning. The court said: "The fact that it is liable to explode by means of lightning, against which no human agency can guard, is decisive of the question." In Wilson v. Phoenix Powder Co., 40 W. Va. 413, 52 Am. St. Rep. 890, 21 S. E. 1035, the cause of the explosion was unknown, but the defendant was held liable, and the court said: "Was the defendant maintaining a public nuisance? If it was, it was engaged in the commission of a public wrong, and, injury resulting therefrom to the plaintiff, the defendant must repair such injury." And further, in the same opinion: "If damage happen to a person from explosion, the injured party is entitled to compensation without proving negligence on the part of defendant. He is injured by that which breaks the law made for his protection—the law against public nuisance. He is in no fault, while the other man is, and he has received damages from that other man's wrongful act. He has a right

to immunity from this injury, and the other man owes him the duty of securing him immunity." In a very late case in Ohio (Bradford Glycerine Co. v. St. Mary's Woolen Mfg. Co., 60 Ohio St. 560, 71 Am. St. Rep. 740, 45 L. R. A. 658, 54 N. E. 528), the question is elaborately discussed, and it was held that one who stores nitroglycerine on his own premises is liable for injuries to surrounding property by its exploding, although he neither violates any provision of the law regulating its storage nor is chargeable with negligence contributory to the explosion. In Hazard Powder Co. v. Volger, 58 Fed. 153, 7 C. C. A. 130, defendant was held liable for damages caused by the explosion of its powder magazine from an unknown cause. It was said: "It is liable for the injuries resulting from its explosion from any cause, because its location under the ordinance made it a nuisance." In Myers v. Malcolm, 6 Hill, 292, 41 Am. Dec. 744, the defendant was held liable where the explosion was caused by the building in which the powder was stored taking fire. The court said: "The situation of the building was such as to render the gunpowder dangerous to the lives of the citizens, for an explosion, either by accident or design, at any period of time after the deposit, would in all human probability have proved destructive to more or less of the inhabitants residing in the neighborhood." In McAndrews v. Collerd, 42 N. J. L. 189, 36 Am. Rep. 508, the damage was caused by the explosion of blasting materials from an unknown cause; and the chancellor, in delivering the opinion, held that depositing such materials in the vicinity of a dwelling-house is a nuisance per se, and that, if injury results therefrom, the person so keeping them is liable, "even though the act occasioning the explosion is due to other persons, and is not chargeable to his personal negligence." It is said in Webb's Pollock on Torts, American edition, page 615: "The risk incident to dealing with fire, firearms, explosives, or highly inflammable matters, corrosive or other dangerous or noxious fluids, and (it is apprehended) poisons, is accounted by the common law among those which subject the actor to strict responsibility. Sometimes the term 'consummate care' is used to describe the amount of caution required, but it is doubtful whether even this be strong enough. At least we do not know of any English case of this kind (not falling under some recognized head of exception) where unsuccessful diligence on the defendant's

part was held to exonerate him." It is a maxim of our law "that no one should suffer by the act of another": Civ. Code, sec. 3520. In this case, if the plaintiffs, whose property was injured, must suffer, it would, at least to some extent, be by the act of the defendant. The defendant, by its acts in bringing and storing the large quantity of powder near plaintiffs' property, violated the law. Such violation of law, together with the act of the Chinaman, caused the damage. It is claimed that this is a very singular case, and the only one of the kind in the books, and that it should be distinguished from the lightning cases, because it is possible to so insulate a powder magazine that lightning would not strike it. It would have been possible for defendant to have kept matches from the person of the Chinaman while working around the powder magazine. It would have been possible, and it was defendant's duty, to keep its magazine in such locality that, if it exploded, it would not have injured the plaintiff's property.

It follows that the judgment should be affirmed.

We concur: Gray, C.; Smith, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment is affirmed.