F. C. McGHEE v. NORFOLK AND SOUTHERN RAILWAY COM-
PANY and J. G. WHITE & CO.

(Filed 18 March, 1908).

1. Explosives — Negligence — Duty of Owner of Premises — Tres-
passer—Pistol Shot—Evidence—Nonsuit.

Defendant construction company, engaged in building a railroad
for defendant railway company, stored a quantity of dynamite, to
be used in its operations, in a shanty on its right of way, near by
a public highway. Plaintiff, passing near to the shanty, not
knowing its contents, fired a pistol ball into a knot hole in the
shanty as a target, exploding the dynamite and injuring plaintiff:
*Held*, (1) that defendant was not guilty of any breach of duty to
plaintiff in the premises; (2) that the proximate cause of the ex-
plosion was the wrongful trespass by plaintiff in unlawfully
shooting into the shanty; (3) that the court below should, upon
plaintiff's evidence, have sustained a motion for judgment of non-
suit.

2. Same.

It is immaterial whether plaintiff was in the highway or on the
right of way at the time he fired the pistol. In either place he
became a trespasser by firing the ball into the shanty.

3. Same—Public Nuisance.

If defendant's act constituted a public nuisance, he was liable to
indictment, and to an action for damages by one who sustained
special injury, of which such nuisance was the proximate cause.

4. Public Nuisance—Damages—Proximate Cause.

When the plaintiff sues for special damages by reason of a pub-
lic nuisance, he must show as an essential element in his cause of
action that such nuisance was the proximate cause of his injury.
When upon his own evidence he fails to do so, the court should
enter judgment of nonsuit.

5. Trespasser—Explosives—Duty of Owner of Premises—Reasonable
Precaution.

The measure of duty which the owner of the premises owes to a
trespasser is not to willfully injure him or to place a dangerous
instrumentality on his premises, if he has reasonable cause to be-
lieve that a trespasser will come thereon and be injured—that is,
to take reasonable precaution to prevent injury to an apprehended
trespasser.

CLARK, C. J., dissenting, *arguendo;* HOKE, J., concurring in the dis-
senting opinion.

McGHEE *v.* RAILROAD.

ACTION tried before *Lyon, J.,* from CRAVEN, November Term, 1907.

This action was heard upon the complaint and demurrer. Plaintiff alleged:

1. That the defendant Norfolk and Southern Railway Company is organized and existing according to law, and that at all times herein mentioned it was engaged in operating railroads in said State and elsewhere.

2. That defendant J. G. White & Co. is a foreign corporation and at all times herein mentioned was engaged in constructing a railroad for the defendant Norfolk and Southern Railway Company from New Bern to Washington, North Carolina, as plaintiff is informed and believes.

3. That, on or about 14 May, 1907, the defendants wrongfully, unlawfully and negligently permitted about 1,600 pounds of dynamite to be kept in a small wooden building along the line of its track and near one of the public roads of Craven County, about one mile from the city of New Bern, without any notice or warning to the public that said wooden structure contained dynamite or other explosive matter.

4. That said wooden structure in which said dynamite was kept was in a public place, where trains were passing and where many people passed to and fro, and the house appeared to be an old abandoned shanty, without any evidence that it contained dynamite, and was a public nuisance to the citizens of Craven County and others along said railroad and said public road.

5. That the plaintiff, on the said 14 May, 1907, was an employee of the Western Union Telegraph Company and was engaged in constructing a telegraph line for said company from New Bern, N. C., to Bayboro, N. C., and was living in a camp near to the said shanty which contained the said dynamite, without any knowledge on the part of the said plaintiff that the said shanty contained dynamite or other explosive matter.

McGHEE v. RAILROAD.

6. That on the morning of the said 14 May, 1907, the plaintiff, with a companion of his, was engaged in shooting at a target, and, on account of the negligence of the defendants in keeping dynamite stored in said shanty, without guards and without any warning to the public or to this plaintiff, plaintiff shot at a knot hole of said shanty, when a terrific explosion followed, blowing the house to atoms and causing portions of the house to be blown against and upon the plaintiff, striking him upon the head and arm and knee and across his stomach, severely wounding and injuring him and knocking him unconscious and almost killing him, and causing him to be confined to the hospital for a long time and to suffer great mental and physical pain and anguish, and to incur a doctor's bill of $..., to his damage in the sum of $2,000. Whereupon, etc.

Defendants demurred, assigning as grounds of demurrer that the facts set out in the complaint did not constitute a cause of action, for that, etc. His Honor overruled the demurrer, and defendants excepted and appealed.

*D. E. Henderson* and *D. L. Ward* for plaintiff.
*Moore & Dunn* for defendants.

CONNOR, J., after stating the facts: Taking the averments in the complaint to be true, as admitted by the demurrer, two questions are presented:

1. Was there a breach of duty to the plaintiff on the part of the defendants?

2. Was it the proximate cause of the injury?

It is said that the demurrer admits negligence. The demurrer admits the *facts* set out, with such inferences to be drawn from them as are most favorable to plaintiff. The law prescribes the measure of duty which defendants owe to plaintiff upon the *facts* and the inferences to be drawn from them. A defendant cannot by demurring change the law. Stripped of immaterial verbiage, the plaintiff says defendants were engaged in constructing a railroad between the points named;

they permitted about 1,600 pounds of dynamite to be kept in a small wooden building along the line of their track and near one of the public roads in Craven County, about one mile from the city of New Bern, without any notice or warning to the public that the building contained dynamite. The building was in a public place, where trains were passing. The house appeared to be an old abandoned shanty. Plaintiff was an employee of the Western Union Telegraph Company, was engaged in constructing a telegraph line, and was living in a camp near the shanty in which the dynamite was stored, of which he had no knowledge. On the morning of 14 May, 1907, the plaintiff, with a companion, while engaged in shooting at a target, shot at a knot hole in the weatherboarding of the shanty, causing a terrific explosion, whereby he was injured, etc.

Actionable negligence consists in a breach of duty to plaintiff. A public nuisance is actionable only when a private injury is sustained by plaintiff. "In order to sustain an action, the plaintiff must state and prove facts sufficient to show what the duty is, and that the defendant owes it to him." *Shepherd, J.,* in *Emry v. Nav. Co.,* 111 N. C., 94. "It has been often pointed out that a person cannot be held liable for negligence unless he owed some duty to the plaintiff and that duty was neglected." *Lane v. Cox,* 1 Q. B. D., L. R. (1897), 415. "The duty itself arises out of the various relations of life and varying obligations under different circumstances. In one case the duty is high and imperative; in another it is of imperfect obligation." In every case wherein negligence causing injury is alleged, it becomes necessary to inquire what relation plaintiff bears to defendant. It is impossible to ascertain whether the defendants owe any, and if so what, duty to plaintiff, until the legal relation existing between them in respect to the cause and occasion of the damage is settled. To say that the storing of the dynamite in the place and manner alleged in the complaint is a public nuisance does not in

any degree affect the question or aid us in its settlement. For maintaining a public nuisance the defendants are liable to indictment. The citizen can sue only when he sustains special damage—different in kind from the public. It is elementary that plaintiff had no cause of action against defendants for placing the dynamite in the shanty. He must establish some relation between defendants and himself from which a duty to him is imposed upon defendants. "The expression 'duty' properly imports a determinate person to whom the obligation is owing, as well as the one who owes the obligation. There must be two determinate parties before the relationship of obligor and obligee of a duty can exist." 1 Street Foundations Leg. Liab., 94. The duty grows out of the relationship. What relationship existed between plaintiff and defendants at the time of and in regard to the conditions out of which the damage was sustained? Plaintiff had a right to pass along the public highway and to use the public highway as any other citizen. Defendants owed him the duty not to obstruct the highway or to place dangerous explosives so near thereto as to endanger his life or person. For any injury caused by a breach of this duty defendants were liable. Plaintiff had no right, while passing along the highway, to go upon defendants' premises or to shoot at or into their houses. He was not in the employment of defendants, nor does he pretend that he occupied any relation to defendants making him a licensee, either express or implied. He says that he "was engaged in shooting at a target." The case then comes to this: Defendants have stored on their right of way, in the shanty, to be used in constructing a railroad, the quantity of dynamite named. The plaintiff commits a trespass upon the property by shooting into the house, through a knot hole, not knowing the dynamite was stored therein. Conceding that storing the dynamite in the shanty without giving notice constituted a public nuisance, what duty did defendants owe plaintiff, a trespasser upon their premises? It will be ob-

served that he was not attempting to abate the nuisance. The defendants were engaged in constructing the railroad, hence no question in regard to the right of the public to go upon the right of way is presented. It does not very clearly appear whether, when he shot at the knot hole, plaintiff was on the public highway or on the right of way. It is immaterial where he was standing. Assuming that he stood in the highway, it is manifest that in shooting at the knot hole he was as essentially a trespasser as if he had gone on the right of way or premises and struck the shanty with his pistol. It is clear that, in respect to the cause of the explosion, plaintiff was a trespasser. In Street's Foundations of Legal Liab. (Vol. I), 155, it is said: "When mischief happens to a trespasser by reason of the defective or dangerous condition of the premises upon which he trespasses, he is very properly held to assume the risk, and no recovery can be had against the keeper of those premises. As it is commonly and somewhat more artificially put, the implied duty to prevent harm from unsafe premises does not exist in favor of a trespasser." *Zoebisch v. Tarbell,* 92 Mass., 385. The view which we find most favorable to plaintiff is thus stated: "The preferable view is believed to be that a party's liability to trespassers depends upon the former's contemplation of the likelihood of their presence on the premises and the probability of injury from contact with conditions existing thereon. While, as a rule, a party will not be deemed to anticipate the commission of a willful wrong, yet when, under the circumstances, a technical trespass may reasonably be anticipated the owner of premises will be liable for a failure to take reasonable precautions to prevent injuries to the trespasser." 21 Am. and Eng. Enc., 473. Adopting this standard of duty, we are unable to perceive how the plaintiff can maintain his action. There is no suggestion that plaintiff or any other person was in the habit of shooting at the house in which the dynamite was stored, or that it was so situated, with reference to the

camp in which he lived, that defendants' servants knew or had cause to believe that he would "engage in shooting at a target" near the house. To impose upon defendants the duty of provision to the extent necessary to maintain this action would be burdensome to the owners of property. To say that defendants are required to anticipate, not only that some one would engage in shooting at a target there, which is about as far removed from a knot hole as substance is from shadow, but that he would find a knot hole in the shanty unknown, so far as it appears, to defendants; that not a technical, but an actual and injurious trespass would be successfully committed; that a skilled marksman would select this particular knot hole and shoot into it, is, to put it mildly, a severe strain upon the duty of provision. It will be observed that the breach of duty, even to the public passing along the highway or to persons rightfully on the premises, is not in storing the dynamite, but in failing to give warning or to put some notice on the house showing that dynamite was stored in it. The plaintiff invokes the maxim, *Sic utere*, etc. Why may not the defendants successfully invoke the same maxim against him? Why may they not say to him, "The use which we made of our property would not have injured you if you had not wrongfully used your pistol, to the injury of our property"? The defendants were doing what they had a legal right to do, provided they gave notice to all persons who were in the exercise of their rights; or, if trespassers, they could not reasonably have anticipated the trespass. If I leave an obstruction to passage through my premises, I am not required, in the absence of any condition putting me upon guard, to anticipate that some one will come along, commit a willful trespass upon them, and be injured by disturbing the conditions which I have created. It is but reasonable and just, if I know or have reason to think that a trespass will be committed, that I am not permitted to leave a death trap or a spring gun set upon my premises without giving notice

thereof.   If I have dug a pit on my premises, and know or
have reason to think that a trespasser, ignorant of its exist-
ence, is going towards it, I may not, either by the code of
sound morality or law, stand by and permit him to go to his
death and acquit myself of liability by saying that he was a
trespasser.   The distinction between such a case and the one
developed by the complaint is obvious.   Defendants had no
reason to suppose that some person would pass along the high-
way and shoot, not only at the house, but select a knot hole, of
which they had no knowledge, as a target, and put the ball
through the hole, causing the explosion.   Hence they owed no
duty to plaintiff to anticipate such an improbable and unusual
combination of conditions.   The law is made by and for prac-
tical men for the practical affairs of everyday life.   Judges
must, in its interpretation and application, have regard to its
origin and function.   While enforcing the wise and just
maxim requiring every one to so use his property as not to in-
jure his neighbor, harsh rules and heavy burdens must not be
imposed upon the use of property for the benefit of trespassers
and wrongdoers.   To do so would render the fruits of honest
industry and economy not only insecure, but make these vir-
tues the occasion for punishment.   If men wish to go along
the public highway shooting at targets, either real or imagi-
nary, on the premises of those owning or using property near
by, they must abide the consequences, however regrettable.
The plaintiff, instead of seeking to mulct the defendants in
damages, should congratulate himself that his folly has not re-
sulted in his own and the death of his companion and of other
innocent persons, and that he is not sued for the injury done
defendants' property.   It is suggested that the case may be
likened to those wherein the owner sets a spring gun or trap
on his premises for the purpose of injuring apprehended tres-
passers.   The liability there grows out of the fact that the
gun or trap is set for the purpose of injuring trespassers.
The owner foresees that they will come upon his premises,

and intends that they shall be injured.   As he could not, for the purpose of preventing a trespass, shoot or wound the trespasser with a gun in his hand, he cannot accomplish the same end by setting the gun for that purpose.   The distinction between those cases and the one before us is manifest.

It is a mistake to say that the defendants are driven to the defense of contributory negligence.   The plaintiff fails to make a case of actionable negligence, because, in respect to the conditions existing and the manner in which he sustained damage, he shows no breach of a legal duty to him.   It is by no means clear that the dynamite stored as described in the complaint was, in the ordinary acceptation of the term, a public nuisance.   While we do not conceive that it is material to the decision of this appeal, we note an interesting discussion upon the question in *Kleebour v. West Fuse, etc., Co.,* 138 Cal., 497 (94 Am. St. Rep., 62).   In this case defendant had stored, in the prosecution of its business, a quantity of gunpowder in a magazine near dwelling houses.   A Chinaman, who had been in the employment of defendant company, killed another Chinaman and fled into the magazine.   He piled a number of metal cans, in which gunpowder was kept, in the door of the magazine, and announced that, if any officer attempted to arrest or take him, he would set fire to the powder.   After some time spent in endeavoring to persuade him to come out of the magazine, an attempt was made to take him, when he set fire to and exploded the powder, destroying the factory, killing some of the officers and injuring the dwelling house of plaintiff.   The trial court held that the defendant company was guilty of maintaining a nuisance *per se,* and "that it was an insurer against all damage from whatever cause."   Defendant appealed from a judgment against it. The appeal was heard by a "department" of the Supreme Court and affirmed.   (69 Pac. Rep., 246).   It was thereupon, in accordance with the system of hearing appeals which prevailed in California, heard *"in Banc"* by the full bench .

and the judgment reversed.    The opinion by *Van Dyke, J.,*
is learned and exhaustive in the discussion of the authorities.
He concludes: "The damage in question resulted from a
cause entirely beyond its control and without any carelessness
on its part whatever, and, under the more recent and better
line of authorities, it is not responsible."    Among other de-
cided cases cited and commented upon by the learned Judge
is *Tuckachinsky v. Lehigh, etc., Co.,* 199 Pa., 515, in which it
appeared that the defendant had stored dynamite and black
powder in a wooden building, fourteen feet square and twelve
feet high, in an open space near the shaft of its colliery.    An
explosion was caused by lightning.    The plaintiff, standing in
the door of her father's house, was injured.    The court
instructed the jury to find for the defendant.    Upon appeal it
was said: "The explosion was caused by no act of the defend-
ant, but by a stroke of lightning.    The trial court could not
have sustained a verdict for the plaintiff upon the evidence."
The judgment was affirmed.    *Kenney v. Koofman,* 116 Ala.,
310 (67 Am. St. Rep., 119).    These cases are not cited to
establish the proposition that defendant would not be liable
to a person using the highway or living near by the place at
which the dynamite was stored, if injured by its explosion.
Nor do we express any opinion in regard to the liability of
defendants for damage sustained by one who had no connec-
tion with the explosion.    In many of the cases cited in sup-
port of plaintiff's right to recover it will be noted that the
injury "resulted from the nuisance," which we take to mean
was the proximate cause of the injury.    This is manifestly
true, but by no means decisive of this case.    In *Woolf v.
Chalker,* 31 Conn., 131, the plaintiff was not a trespasser;
the liability is made to rest upon the same principle which
holds the owner of premises liable for injuries inflicted by
spring guns.    *Butler, J.,* says: "A dog is an instrument for
protection; a ferocious one is a dangerous instrument, and
the keeping him on the premises to protect them against tres-

passers is unlawful, upon the same principle that setting spring guns or concealed spears or placing poisonous food is unlawful." It is not practicable to discuss this case at length, but an examination of it will discover that it is by no means decisive of the question before us.

In *Allison v. Railroad,* 64 N. C., 382, the slave was placed by agents of the defendant company to sleep in a room in which powder was stored under the bed. It was exploded and the slave was killed. The difference between the cases is obvious and needs no discussion. In *Haynes v. Gas Co.,* 114 N. C., 203, defendant permitted a live wire to be on or near the sidewalk along a public street in the city of Raleigh. Plaintiff's intestate, a boy about ten years old, walking along the street, took hold of it and was killed. *Burwell, J.,* writing the opinion, thus puts the case: "Plaintiff says to defendant: 'The wire you put in the street killed my son while passing along the highway, as he had a right to do. If you are not in default, show it and escape responsibility.'" This language clearly points out the distinction between the cases. In *Powers v. Harlow,* 51 Am. Rep., 160, the shed was not securely fastened, and the child of one of defendant's lessees got into it and exploded the cartridges. Defendant was held liable. The *child,* in regard to whom an exception is always recognized, as in the "turntable cases," was rightfully on the premises; its father was lessee. Conceding, however, that the defendant was guilty of negligence in storing the dynamite, as alleged in the complaint, and eliminating all question of contributory negligence, it is manifest that, upon the facts set forth, such negligence was not the proximate cause of the damage sustained by him. We know, without controversy, that the dynamite stored as described in the complaint would not have been exploded unless brought into contact with either an electric current or some substance adequate to that end; that, as a matter of fact, plaintiff by his act caused the explosion; that no explosion at that time or in that manner

would have occurred if plaintiff had not by his conduct caused it; that in doing so he was not in the discharge of any duty to defendant or to any employee of defendant, or exercising any legal right, either express or implied; that, on the contrary, he was committing a trespass, a misdemeanor (Revisal, sec. 3673), in shooting at "an uninhabited house." Why, then, is not his act, in legal contemplation, the proximate cause of the damage? It is the last cause in order of time— the efficient cause. Our investigation does not disclose any case in which a trespasser whose conduct actively, affirmatively, brought about the condition which caused the damage has sued therefor. Many cases discussing and illustrating the doctrine of proximate cause as an essential element in actionable negligence are to be found, wherein an innocent person has sustained injury by reason of the intervention of strangers with conditions for which the defendant was responsible. In these cases the question which has sometimes given concern to the courts is whether such interference was so related to the conduct of defendant and the injury sustained by plaintiff as to break the connection, or, as is sometimes said, "insulate" the original negligence. This case, so far as we can discover, is of first impression. In a recently reported case decided in the Court of Appeal in England the doctrine is discussed and clearly stated. The servants of a railway company left trucks or vans in a condition which enabled some boys, trespassers, to release or turn them loose. They ran down the inclined track and injured a person passing along the highway. The jury found that the trucks were in a safe condition, unless interfered with; that the accident would not have happened if the van had not been interfered with; that the interference was the act of trespassers, who acted negligently; that the danger of interference was known to and could have been guarded against by defendant, etc. *Williams, L. J.,* after discussing the question of defendant's negligence, concludes: "Even assuming any neglect of duty here by the railway com-

pany, what one has to ask oneself is this, Was the neglect by
the railway company of precautions the effective cause of this
accident? I confess I think, on this evidence, such neglect
was not the effective cause of this accident, and, as *Lord Esher*
says, if it was not, that means that the defendants are not
liable." *Stirling, L. J.,* says: "The jury have found that
the van was in a safe position as and where it was left by the
defendant's servants, unless interfered with afterwards, and
that the accident would not have happened if the van had not
been interfered with, and that the interference was the act of
trespassers, who acted negligently. Then what really hap-
pened was that some boys got into or on the van and undid
the brake and couplings, and that this led to the accident."
*McDowell v. Great W. Ry. Co.,* L. R. 2, K. B. D. (1903), 331.

We had occasion to consider the doctrine of proximate
cause as an element in actionable negligence involving the
intervention of an intelligent independent agent in *Harton v.
Tel. Co.,* 146 N. C., 429. In that case injury resulted from
the conduct of an intervening agent. It was held that her ad-
ministrator could not recover. We do not care to review the
authorities cited in that opinion. Our investigation has dis-
covered several well-considered cases on this much-discussed
doctrine. *Georgetown Tel. Co. v. McCullough's Admr.,* 80
S. W. (Ky.), 782; *McGohan v. Gas Co.,* 140 Ind., 335 (49
Am. St. Rep., 199). The doctrine is well stated in *Wright v.
C. & N. W. Ry. Co.,* 27 Ill. App., 200. Defendant, in viola-
tion of the town ordinance, stored in a frame building a large
quantity of crude petroleum, gasoline, etc., which was dan-
gerous to plaintiff's building. Defendant's building took fire
and the oil exploded, destroying plaintiff's building. The
cause of the fire was not stated. The Judge rendered judg-
ment of nonsuit. The question was whether keeping the oil
in the building in violation of the ordinance was the proxi-
mate cause of the injury. The Court said: "The mere keep-
ing the oil in its building, although prohibited by the ordi-

nance, gives no right of action to appellants. It is still a question of fact whether the damage alleged was the proximate consequence of such keeping." Quoting the language used by the Court in *A. T. & S. F. Railroad v. Standford,* 12 Kan., 254, it is said: "Any number of causes and effects may intervene between the first wrongful cause and the final injurious consequence, and, if they are such as might with reasonable diligence have been foreseen, the last result, as well as the first and every intermediate result, is to be considered in law as the proximate result of the first wrong cause. But whenever a new cause intervenes which is not a consequence of the first wrongful cause, which is not under the control of the wrongdoer, which could not have been foreseen by the exercise of reasonable diligence by the wrongdoer, and except for which the final injurious consequence could not have happened, then such injurious consequences must be deemed too remote to constitute the basis of the cause of action." *Ramsbottom v. Railroad,* 138 N. C., 38. That one of the defendants maintained a public nuisance on its premises does not make it liable to plaintiff. To do so, the maintenance of the nuisance must be the proximate cause of his injury. This principle is illustrated in many cases wherein actions are brought for violation of town ordinances. As said in *Brown v. Seigel-Cooper Co.,* 90 Ill. App., 49, "The mere failure to obey a town ordinance is not of itself sufficient to entitle the plaintiff to recover for personal injuries. It must appear that such failure was the proximate cause of, or at least contributed to, the injury." The law is thus stated and supported by abundant authority in a note to *Sluder v. Transit Co.,* 189 Mo., 107; 5 L. R. A., N. S., 186: "Another rule that admits of no exception is, that the violation of a municipal railroad ordinance imposes no liability upon the offender to one who suffers injury, unless such violation is the proximate cause of the injury." (Page 209). We announced the same familiar doctrine in *Leathers v. Tobacco Co.,* 144 N. C., 330, reported

in 10 L. R. A., N. S., with exhaustive note.  So, conceding that the dynamite as stored was a public nuisance, the plaintiff must, in order to recover, show that, without any independent intervening cause, it resulted in damage to him.  Care must be taken to note that we are not considering the question of contributory negligence.  Proximate cause pertains to the plaintiff's cause of action; contributory, to the defendants' claim to be exonerated from their negligence, and it does not arise until plaintiff has made out his case, *damnum et injuria.*  It is, therefore, not only proper but necessary to decide the question upon the demurrer.  If the facts stated in the complaint in respect to the manner in which the injury was sustained are capable of more than one reasonable inference, the question should be submitted to the jury.  If, as said in *Leathers v. Tobacco Co., supra,* "there be any dispute regarding the manner in which the injury was sustained, or if upon the conceded facts more than one inference may be fairly drawn, the question should be left to the jury; yet it is equally well settled that, where there is no dispute as to the facts, and such facts are not capable of more than one inference, it is the duty of the Judge to instruct the jury, as matter of law, whether the injury was the proximate cause of the negligence of the defendant."  *Ramsbottom v. Railroad, supra; Harton v. Tel. Co., supra.*  We entertain no doubt that, considered from either point of view, the demurrer should have been sustained.  In overruling it there was

Error.

CLARK, C. J., dissenting: The demurrer admits every allegation properly pleaded in the complaint.  It is, therefore, admitted, for the purposes of the demurrer, that the defendant White & Co., while engaged in building a railroad for its codefendant, "wrongfully, unlawfully and negligently kept 1,600 pounds of dynamite in a small wooden building near the railroad track and near a public road, about one mile from

the city of New Bern, without any notice or warning to the public that said building contained dynamite or other explosive."

It further admits "that said wooden building in which said dynamite was kept was in a public place, where trains were passing and where many people passed to and fro; that the house appeared to be an old, abandoned shanty, without any evidence that it contained dynamite."

It further admits that storing such a quantity of dynamite near a public road, where many people passed to and fro, near a city, in an apparently abandoned shanty, without any notice of dynamite being stored therein, "was a public nuisance to the citizens of Craven County and others along said railroad and said public road."

The demurrer further admits that the plaintiff, who was an employee, "constructing a telegraph line and living in a camp near said shanty containing said dynamite, without any knowledge on his part that dynamite was stored therein," and, "on account of the negligence of the defendant in keeping dynamite stored in said shanty, without any notice of such storage and without any guard, shot at a knot hole in said shanty, causing a terrific explosion," demolishing the house, portions of which were blown against and severely wounded and injured the plaintiff, who barely escaped with his life.

It was criminal negligence, greater by far than setting a spring gun or strewing poison about, to store 1,600 pounds of one of the most powerful explosives known to science in an apparently abandoned old shanty near a public road frequented by many passers-by, in a mile of a populous city and without the slightest notice that it contained concealed therein a most deadly peril. Any boy passing along the public road would be tempted to throw a stone and any sportsman to fire at a mark on an "apparently abandoned" old shanty near the side of the public road, when there was no notice or other reason to suppose that it was dangerous or other than it seemed.

Whether the plaintiff was guilty of contributory negligence, which our statute (Revisal, sec. 483) requires "shall be set up in the answer and proved on the trial," and whether there were reasons which excused the negligence of the defendants in storing 1,600 pounds of a most powerful explosive near the side of a much-traveled public road, within a mile of a large town, without any notice, are matters which could only arise upon an answer and on the trial. The nature and location (near a public road and near a railroad track as well) of the building was not such as would cause anyone to suspect that it was almost certain death to strike the house with a stone or other missile. It does not appear whether the shot went through the knot hole or not, for after it was fired the hole was the only part of the building that remained.

The demurrer admits the allegation that such conduct of the defendants was such negligence as to make it a "public nuisance," and admits in express terms that "on account of such negligence" the plaintiff was moved to fire at a mark on such "apparently abandoned old shanty." Upon such admissions, his Honor, in accordance with numerous precedents, a few of which are cited below, overruled the demurrer, so that the defendant might set up his defense. The defendant, notwithstanding the known diligence of his counsel, does not cite a single precedent in his brief to show error.

The doctrine is well known that spring guns and traps placed on one's own premises, but to the danger of others, are a nuisance. This dynamite was in effect "concealed," for it was put in an apparently abandoned shanty, where no one could, with the greatest forethought and sagacity, suspect it to be, and it does not appear even that it was on the premises of either of the defendants. Presumably it was not on the premises of the owners of the dynamite, who were contractors; and whether or not the codefendant, the railroad company, was responsible for such negligence of an independent contractor is a matter not arising upon the demurrer. The demurrer

admits that the conduct alleged was a "public nuisance," and that "on account of the negligence" in storing dynamite in said shanty, without any notice, the plaintiff did the act which brought about the injury.

Where dynamite was stored on a farm in a shed not securely fastened, and the child of one of the landlord's lessees got into the shed and exploded one of the cartridges, the landlord was held liable for the injury because there was no warning on the shed to notify parents of the danger. *Powers v. Harlow,* 51 Am. Rep., 160. Yet there, unlike here, it appeared that the shed was on defendant's own premises, and that it was not near the road.

It is negligence for a railroad company to leave on its own track explosive and dangerous objects, like a signal torpedo (exploded like dynamite), without notice or other precaution. 19 Cyc., 15.

The law implies a duty not to place an explosive where it is likely to injure property or persons. 7 Current Law, 16, 378. If some one else had exploded this concealed dynamite, injuring the plaintiff, who happened to be near, the demurrer could not be sustained. It is, therefore, a question of contributory negligence, to be raised by answer, whether the defendant is protected from liability because the plaintiff himself fired the shot, which the demurrer admits he was moved to do "on account of the negligence of the defendant" in storing the dynamite in an unlikely place without notice. Whether the storage of dynamite, by reason of the location or its manner, is negligence, is a question of fact for a jury. The highest degree of care is required as to so powerful an explosive. *Tissue v. Railroad,* 112 Pa., 91.

In *Allison v. Railroad,* 64 N. C., 382, the company was held liable where an employee was killed by an explosion of powder temporarily placed under his bed without his knowledge, the explosion having been caused, as was supposed, by fire from a torch while he was looking for his hat.

In *Haynes v. Gas Co.,* 114 N. C., 203, in a very able opinion by *Burwell, J.,* it was held that the court should have told the jury that there was no evidence of contributory negligence when a boy ten years old, while walking along the street, grasped a live wire (which killed him), because there was no visible indication that it was charged with electricity.

This apparently abandoned old shanty near a much-traveled public road and near the railroad track also, in a mile of a large town, had no notice on it, and nothing else visible to indicate that it had 1,600 pounds of dynamite therein and that it was more deadly than a live wire.

Whether it was contributory negligence or not for a passer-by to shoot at the old shanty, is a defense, and might be raised if set up by the answer; but surely it should not be held that the plaintiff was guilty of contributory negligence, or that the defendant was not guilty of negligence, upon a demurrer which admits that the storing of dynamite in such a place, without notice of any kind, was "a public nuisance," and that "on account of such negligence" the plaintiff was moved to fire at the shanty.

The explosion was not caused by the shot striking the shanty, but by its striking the dynamite negligently stored therein by defendants, without any notice posted or other precaution, and that such storage was negligence is averred in the complaint and admitted by the demurrer.

On a complaint and demurrer the facts must be taken as stated in the complaint. There is no statement therein that the shanty was "on the defendant's premises," nor that the plaintiff shot "at its house." It is not alleged that the defendant contractors had any premises; and, while it is alleged that the shanty was along the railroad track and near the public road, it is not alleged how wide the right of way was, nor how near the shanty was to the track, nor that it was on the right of way, and there is no allegation to justify the assumption that the plaintiff was a trespasser. For all that appears,

he was in the public road and fired at a shanty near the public road, and not on the right of way of the railroad. It is hardly probable that 1,600 pounds of dynamite were stored on the right of way, so near the track as to endanger an explosion by the concussion of passing trains or the shanty being set on fire by sparks. If stored there, this was beyond question a public nuisance. If any presumption of fact could arise on a demurrer, it is that the plaintiff, "living in a tent, engaged in putting up a telegraph line," was on the spot rightfully and on the telegraph company's premises.

If the demurrer does *not* admit the allegations in the complaint, *i. e.,* (1) that the dynamite was "negligently, wrongfully and unlawfully stored near a public road"; (2) that, thus stored, without any notice, it "was a public nuisance," and (3) that, "on account of the negligence of the defendants in storing dynamite at such place, without any warning to the public or this plaintiff," the plaintiff shot at a knot hole on the shanty; if the demurrer does not admit these allegations, which are in the complaint, but, on the contrary, *does* admit facts *not* stated in the complaint, *i. e.,* (1) that the shanty was on the defendant railroad's right of way, and (2) on the defendant contractor's premises, and (3) that the plaintiff was a trespasser, and (4) that the plaintiff was guilty of contributory negligence, then the defendants were well advised to resort to a demurrer instead of setting up such allegations in an answer which they might have found difficult to prove.

The vice in the argument of defendants is not only in assuming as a fact that the dynamite was stored on defendants' premises, but, if that had been a fact (which could not be true as to but one of the defendants, if true as to either), in ignoring that the storing of so dangerous a substance "near a public road" without notice or other safeguard, is *per se* negligence and a public nuisance as well, because of the danger. When such is the case, the party guilty thereof is liable when injury occurs, whether the injury proceeds from the

147—11

public nuisance by the negligent or malicious act of a third person or by the act of the injured party himself. One is liable if he places on his own premises anything that may be dangerous or injurious to the public.

In *Smith v. Pelah,* 1 Strange, 1264, *Chief Justice Lee* held that, if the owner of a dog knows that it is dangerous and has once bitten a man, and lets him go about or lie at his door, he is liable to an action by anyone bitten thereafter, though it happened by such person treading on the dog's toes. *Id.,* 3 Starkie Ev., 981. This Court has followed the same ruling as to liability of the owner for injury caused by a dog, though on the owner's premises, if he knows he is dangerous. *Harris v. Fisher,* 115 N. C., 318. How much more, therefore, are the defendants liable for storing 1,600 pounds of dynamite "near the public road," without any warning, and in a dilapidated shanty, where its presence could not reasonably be suspected.

In *Woolf v. Chalker,* 31 Conn., 131, the above English case is cited with approval, the Court adding that, when the owner of a dangerous dog allows him to be at large on his own premises and a *trespasser* has been bitten by him, the owner has been held liable, citing *Loomis v. Terry,* 17 Wend., 496; *Sherfey v. Bartley,* 4 Sneed, 58, both of which cases so hold. The above and many other like cases are cited and approved in *Muller v. McKesson,* 73 N. Y., 200. The fact that the dog is known to the owner to be dangerous makes him liable for the injury done by the dog, even on the owner's premises and even to a trespasser, because such a dog, unmuzzled, is a common or public nuisance.

For a stronger reason the dangerous storing of 1,600 pounds of dynamite in an old shanty near the public road and a railroad track, without notice or guard, would make such storing a public nuisance and the owner liable for any injury arising from an act done "on account of such negligence," even though (as does not appear here) the dangerous instru-

mentality had been stored on the defendants' premises and the plaintiff had been a trespasser. We need not cite the many similar cases as to injuries to trespassers from spring guns set or poison placed on the defendant's premises. *Hooker v. Miller,* 18 Am. Rep., 18; *State v. Moore,* 83 Am. Dec., 159.

In a late case from California (*Kleebauer v. Fuse Co.,* 69 Pac., 246) the Court reviews the cases as to storing powder and other dangerous explosives, and says: "The principle is correctly stated by *Mr. Justice Blackburn* in *Fletcher v. Rylands,* 1 Exch., 265: 'We think the true rule of law is that the person who, for his own purposes, brings on his lands and collects and keeps there anything likely to do mischief if it escapes must keep it at his peril, and, if he does do so, he is *prima facie* answerable for all the damage which is the natural consequence of its escape. But for his bringing it there no mischief could have occurred.' This language was approved by *Lord Cranworth* on appeal. 3 H. L. Cas., 330." 1 Wood Nuisance (3d Ed.), 183, says that, when the storing of explosives on one's own premises is under such circumstances as to be dangerous, it is a nuisance, "and if actual injury results therefrom, the owner is liable therefor, even though the act occasioning the explosion is due to other persons and is not chargeable to his personal negligence."

The California Court, *supra,* cites many cases where the owner of the powder, etc., was held liable when the explosion was caused by lightning, on the ground that the cause was the negligently storing, giving opportunity for the explosion. Such was the cause here.

In *Wilson v. Powder Co.* (W. Va.), 52 Am. St., 890, the Court said: "Was the defendant maintaining a public nuisance? If it was, it was engaged in the commission of a public wrong, and for injury resulting therefrom" the defendant is liable.

That this immense amount of dynamite stored in a dilapidated shanty near a public road, without guard or notice, was

liable to be exploded by any passer is shown by the manner in which it was exploded. That made it a menace to the public and a public nuisance, just as a vicious dog or a spring gun would be, and, being a public nuisance, under the above authorities, both English and American, the defendants would be liable even if the dynamite had been stored on defendants' premises and the plaintiff had been a trespasser. *People v. Sands,* 3 Am. Dec., 296; *Myers v. Malcolm,* 41 Am. Dec., 744; Anon., 12 Mod., 342.

The cases which hold that one injured by a public nuisance can recover of the owner without showing negligence, and even when the injured party is himself a trespasser or negligent, are very numerous. Besides those above quoted, and among those where an explosion results, are *Kennedy v. Koopman,* 67 Am. St., 134; 37 L. R. A., 489; *Glycerine Co. v. Manufacturing Co.,* 45 L. R. A., 658; 71 Am. St., 740, and the numerous cases collected, 69 Pac., 249. The facts set out in the complaint and the very manner of this explosion demonstrate the imminent danger of explosion from such manner of storing dynamite, and of injury to those passing along the public road. These made it a public nuisance. Besides, the complaint specifically alleges that it was a public nuisance, and the demurrer admits the fact. Had it been a vicious dog on the owner's premises, and he had bitten one treading on his toes, the owner would have been liable, if knowing the character of the dog. Here the owner did know the dangerous quality of the dynamite. Yet he left it at large, near a public road and near a railroad track, without guard or notice, in a house where no one would suspect its presence. On all the authorities, this was a public nuisance, and the owner is liable for injury from an explosion, however caused, whether by man or the lightning, and whether by the plaintiff or another.