ROY LETCHWORTH v. THE TOWN OF AYDEN, DEFENDANT AND THIRD PARTY PLAINTIFF v. R. L. TURNAGE, JR. AND WIFE, CORABOB SMITH TURNAGE THIRD PARTY DEFENDANTS

No. 793SC168

(Filed 20 November 1979)

**Electricity § 5— negligence in maintenance of power lines—genuine issue of fact**

The evidence on motion for summary judgment presented a genuine issue as to defendant town's negligence in the maintenance of its electric power lines and did not disclose contributory negligence by plaintiff as a matter of law where it showed that defendant town operated an electric distribution system for profit; plaintiff, while working on the roof of a building, raised a 10-foot downspout; the downspout came in contact with defendant's high voltage wires (7200 volts) which crossed over the roof, and plaintiff received serious injuries; defendant town had adopted the National Electrical Code as an ordinance, and the Electrical Code required that electrical conductors be insulated and that there be a minimum clearance for conductors carrying more than 600 volts; the wires over the building where plaintiff was working had become uninsulated in spots; and the wires may have been below the minimum clearance required by the Electrical Code.

APPEAL by Roy Letchworth, plaintiff, and Town of Ayden, Third Party Plaintiff, from *Smith (Donald), Judge.* Judgment entered 30 November 1978 in Superior Court, PITT County. Heard in the Court of Appeals 18 October 1979.

R. L. Turnage, Jr., and Corabob Smith Turnage owned a building in the Town of Ayden which was leased to Sumrell Fur-

niture Company. The Turnages contracted with Bateman Roofing and Electrical Contractors to repair the roof and gutters on the building. Plaintiff was an employee of Bateman Roofing and Supply and had been on the Turnage job with two other laborers for a day and a half when the incident which gave rise to this action occurred.

The Town of Ayden owned and operated an electric distribution system for profit. At all times hereinafter there was in effect within the town an ordinance denominated Ordinance 1971-72-22 which included *inter alia* the North Carolina Electrical Code adopting by reference the National Electrical Code. Section 310-2 of the National Electrical Code, as adopted, requires that conductors of electric current be insulated. The Code further requires a clearance of some minimum height for conductors carrying more than 600 volts.

As a part of its electric distribution system, the Town of Ayden owned and operated high voltage lines (7200 volts) on poles along the north side of an alley adjacent to the building and across the roof of the building owned by the Turnages. The wires were insulated but bare in spots — naked as described by one witness. Testimony varied somewhat concerning the height of the lines over the building. Plaintiff's complaint alleges that the distance of the wire from the roof of the building was deceptive. One of plaintiff's co-workers testified by deposition that the wires were three or four feet above the roof. Another co-worker stated that an average man could touch the wires while standing on the building. There was further testimony by deposition as to a "bunch of wires on a pole" and the presence of two to four or five wires. The plaintiff referred to a telephone pole being "up there."

On 3 September 1975, during the course of work on the roof, plaintiff raised a 10-foot downspout. The downspout came in contact with the uninsulated or poorly insulated wires, which caused the high voltage electric current to pass through plaintiff's body and resulted in his 100% disability.

The defendant Town of Ayden answered the plaintiff's complaint with a general denial, pleaded plaintiff's contributory negligence as a bar, and made the Turnages as owners of the building third party defendants, asking for contribution and indemnification.

Motion for summary judgment was made by the Town of Ayden and the Turnages and allowed by the court. Plaintiff appealed the order allowing summary judgment against the plaintiff and for the Town of Ayden. The Town of Ayden appealed the order allowing summary judgment for the Turnages.

*Fred W. Harrison, for plaintiff appellant.*

*Gaylord, Singleton & McNally, by Louis W. Gaylord, Jr., for defendant appellant, Town of Ayden.*

*Lewis, Lewis & Lewis, by John B. Lewis, Jr., and White, Allen, Hooten, Hodges & Hines, by Thomas J. White, for R. L. Turnage, Jr., and Corabob Smith Turnage.*

HILL, Judge.

Did the court err in granting summary judgment in both instances in this case?

Only when there exists no genuine issue as to a material fact should a motion for summary judgment be allowed. G.S. 1A-1, Rule 56(c). Summary judgment for a defendant, in a negligence action, is proper when the uncontradicted evidence shows the absence of negligence on the part of the defendant, or where contributory negligence on the part of the plaintiff as a matter of law is established by uncontradicted evidence, or where it is established that the purported negligence of the defendant was not the proximate cause of the plaintiff's injury. *Hale v. Power Co.*, 40 N.C. App. 202, 252 S.E. 2d 265 (1979); *Bogle v. Power Co.*, 27 N.C. App. 318, 219 S.E. 2d 308 (1975), *cert. denied* 289 N.C. 296, 222 S.E. 2d 695 (1976).

Summary judgment provides a drastic remedy and should be used cautiously so that no one will be deprived of a trial or the chance to present evidence on a genuine disputed issue of fact. The moving party has the burden of establishing clearly the lack of a triable issue; and his papers are carefully scrutinized while those of the opposing party are indulgently regarded.

The court properly granted the motion for summary judgment in favor of the defendants, R. L. Turnage, Jr., and wife, Corabob Smith Turnage.

There is evidence that the Town of Ayden was negligent. The wires were uninsulated—bare in spots.

Our courts have held that a supplier of electricity owes the highest degree of care to the public. *Hale v. Power Co., supra, citing Small v. Southern Public Utilities Co.*, 200 N.C. 719, 158 S.E. 385 (1931). "The danger is great, and care and watchfulness must be commensurate to it." *Haynes v. The Raleigh Gas Co.*, 114 N.C. 203, 211, 19 S.E. 344, 346 (1894). The standard is always the rule of the prudent man, so what conduct constitutes reasonable care varies in the presence of different conditions. *Small v. Southern Public Utilities Co., supra.*

It is not negligence per se to use uninsulated wires. The rule as stated in *Mintz v. Murphy*, 235 N.C. 304, 69 S.E. 2d 849 (1952), provides that the duty of providing insulation should be limited to those points or places where there is reason to apprehend that persons may come in contact with the wires.

The Town of Ayden had adopted the National Electrical Code as an ordinance. The Code requires that electrical conductors be insulated and that there be a minimum clearance for conductors carrying more than 600 volts. The power company recognized this and installed insulated wires initially. However, the wires had become bare in spots, and the evidence indicates that they may have been below the minimum clearance.

Certainly, roofs have to be inspected, maintained and repaired, requiring the presence of people. The variance in the height of the wires above the roof along with the degree of "bareness" of the wires could have a bearing on the degree of care which must be exerted by an employee on the roof.

Was the plaintiff contributorily negligent? What degree of care did the plaintiff take in avoiding the wires? Did his precautions to avoid the wires meet the rule of the prudent man? The complaint alleges that the distance of the wires from the roof was deceptive because of their location.

It is well settled that when a person is aware of an electric wire and knows that it might be or is highly dangerous, he has a legal duty to avoid coming in contact with it. *Floyd v. Nash*, 268 N.C. 547, 151 S.E. 2d 1 (1966); *Alford v. Washington*, 244 N.C. 132, 92 S.E. 2d 788 (1956). This does not mean, however, that a person

Sprinkler Co. v. Dockery Corp.

is guilty of contributory negligence as a matter of law if he contacts a known electrical wire regardless of the circumstances and regardless of any precautions he may have taken to avoid the mishap. *Williams v. Power & Light Co.*, 296 N.C. 400, 250 S.E. 2d 255 (1979).

The plaintiff testified in deposition that he remembered raising a 10-foot downspout and that was all he remembered. The other witnesses did not see the accident—only the downspout in contact with the wires and the plaintiff.

We conclude that defendant Town failed to carry its burden of showing the absence of negligence, or that defendant was contributorily negligent as a matter of law, as it was required to do in order to prevail on its motion for summary judgment. At trial, of course, the burden will shift and plaintiff will have the burden of showing that his injury was proximately caused by the negligence of defendant. Summary judgment in favor of defendant Town was not appropriate, and it must be reversed.

Summary Judgment in favor of defendant Town is reversed.

Summary Judgment in favor of third party defendants Turnage is affirmed.

Judges VAUGHN and ERWIN concur.